IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, ROBERT HOOVER, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, CHARLES COSTELLA, and WILLIAM MCCONNELL as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, 620 F Street, N.W. Washington, DC 20004 (202) 783-3788, <br><br> and <br><br> JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE, 620 F Street, N.W. Washington, DC 20004 (202) 783-3788, <br><br><br> Plaintiffs, <br><br> v. <br><br> D&M TILE CORPORATION 111 Braintree Street Albany, NY 12205, <br><br> Defendant. | Civil Action No. |

2327989

<u>**COMPLAINT**</u>

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

**CAUSE OF ACTION**
<u>**Jurisdiction and Venue**</u>

1.      This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI, and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court.

2.      The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2)  Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

<u>**Parties**</u>

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Robert Hoover, William McConnell, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Charles Costellaw, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the

2

meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IPF trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.    The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures").

5.    Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phllips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6.    Defendant, D&M Tile Corporation ("D&M Tile") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of New York.

7.    Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

3

2327989

**Violation Charged**

8.    D&M Tile is bound to the collective bargaining agreements annexed hereto as Exhibits A, B, and C (hereinafter referred to as the "Agreements") by virtue of its execution of such agreements and/or the execution of the agreements by the Eastern Contractors Association, Inc., an association D&M Tile appointed as its sole agent for the collective bargaining, execution and administration of labor agreements.

9.    Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10.    Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11.    An examination of Defendant's books and records ("audit") performed by the independent accounting firm of D'Arcangelo & Co., LLP covering the time period January 1999 through December 2003 revealed that Defendant failed to properly submit required reports and contribution payments for work performed during this time period.

12.    The total of contributions due the IPF and IMI by Defendant for work performed during the months of January 1999 through December 2003, as determined by the audit, amounts to $17,153.46.

13.    Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI, interest in the amount of $7,720.73 and an additional computation of interest in the amount of $7,720.73 calculated from the Due Date at the rate of 15 percent per annum have been assessed on such delinquent contributions determined due by the audit.

14.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1).  Plaintiffs

2327989

have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions and dues checkoff payments in accordance with the terms and conditions of the Agreements.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.      For the total amount of $52,451.97 which is constituted as follows:

a.   For unpaid contributions in the amount of $17,153.46 payable to the IPF and IMI for the time period January 1999 through December 2003, plus any and all additional amounts found to be due and owing through the date of judgment (ERISA Section 502(g)(2)(A); General Collection Procedures of the Central Collections Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures"));

b.   For interest in the amount of $7,720.73 assessed on such unpaid contributions, calculated at 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(B); Collection Procedures);

c.   For an additional computation of interest in the amount of $7,720.73, assessed on such unpaid contributions, calculated at the rate of 15 percent per annum from the Due Date (ERISA Section 502(g)(2)(C)(i); Collection Procedures);

d.   For the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

e.   For the costs of conducting the audit in the amount of $19,507.05 (ERISA Section 502(g)(2)(D));

2.      In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

2327989

3.    That Defendant be directed to comply with its obligations to submit all required reports and to make all contributions and dues checkoff payments due and owing to the IPF and IMI, and to pay the costs and disbursements of this action.

4.    Such other relief as this Court deems appropriate, including judgment for any contributions, dues checkoff payments, and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.


Dated: _August 18_____, 2008        By:_____

Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorney for Plaintiffs

2327989

# EXHIBIT A

# TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS

## AGREEMENT BETWEEN

# EASTERN CONTRACTORS ASSOCIATION, INC.

## AND

# BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL UNION NO. 2, NEW YORK

JUNE 1, 1997 - MAY 31, 2000

NOTE: Revisions, if any, will be printed in the back of the book.

# EASTERN CONTRACTORS ASSOCIATION, INC.

ANTHONY C. CAROPRESO
MANAGING DIRECTOR
6 Airline Drive
Albany, NY 12205
(518) 869-0961
Fax (518) 869-2378

# TABLE OF CONTENTS

| ARTICLE | SUBJECT | PAGE |
|---|---|---|
| | PREAMBLE | 1 |
| I | BARGAINING | 2 |
| II | DURATION AND TERMINATION | 3 |
| III | WAGE AND FRINGE BENEFITS | 4 |
| IV | FRINGE BENEFIT FUNDS  AND FRINGE BENEFIT RECEIPT COUPON | 10 |
| V | HOURS | 21 |
| VI | SHIFT WORK AND OCCUPIED PREMISES | 23 |
| VII | PAYMENT | 23 |
| VIII | ARBITRATION | 26 |
| IX | BONDING | 28 |
| X | NATIONAL AGREEMENT | 28 |
| XI | FOREMEN | 29 |
| XII | ASSOCIATION SECURITY | 31 |
| XIII | PROTECTION | 31 |
| XIV | SEVERABILITY | 32 |
| XV | JURISDICTION | 33 |
| XVI | INTERPRETATION | 37 |
| XVII | STEWARDS | 37 |

| XVIII | TOOLS | 39 |
|---|---|---|
| XIX | PRESERVATION OF WORK | 40 |
| XX | COFFEE BREAK | 43 |
| XXI | SUBCONTRACTING | 43 |
| XXII | NOTICE | 46 |
| XXIII | IMPROVERS | 46 |
| XXIV | MOONLIGHTING AND LUMPING | 47 |
| XXV | EMPLOYEE ASSESSMENT DEDUCTION | 47 |
| XXVI | APPRENTICE WAGES AND WORKING CONDITIONS | 52 |
| XXVII | SHOW - UP TIME | 55 |
| XXVIII | TRAVELING CONTRACTORS | 55 |
| XXIX | UNION SECURITY | 56 |
| XXX | NON-DISCRIMINATION | 58 |
| XXXI | RESIDENTIAL AND REHABILITATION | 58 |
| XXXII | LABOR - MANAGEMENT | 61 |
| XXXIII | DRUG TESTING | 61 |
| XXXIV | ASSOCIATION AND UNION SIGNATURE PAGE | 62 |
| | APPENDIX 1 | 63 |
| | NON-ASSOCIATION EMPLOYER SIGNATURE PAGE | 83 |

# TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS
## AGREEMENT
## BETWEEN
# EASTERN CONTRACTORS ASSOCIATION, INC.
## AND
# BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL UNION NO. 2, NEW YORK

## PREAMBLE

This Agreement, made and entered into on the 31st day of May 1997, by and between Eastern Contractors Association, Inc., Party of the First Part, and Bricklayers and Allied Craftworkers Local Union No. 2, New York for the Tile, Marble and Terrazzo Finishers and Workers, Party of the Second Part, shall become operative and effective on the first day of June 1997 and continue in full force and effect until May 31, 2000.

1

**Unless indicated all provisions of this Agreement apply to both Tile, Marble and Terrazzo Finishers and Tile, Marble and Terrazzo Workers.**

# ARTICLE I
# BARGAINING

Section 1. In accordance with and subject to the provisions of the Labor-Management Relations Act of 1947, as amended, the Party of the First Part recognizes the Party of the Second Part as the exclusive bargaining agent for all employees included under the terms and conditions of employment and all other matters covered by this Agreement. The Party of the Second Part recognizes the Party of the First Part as the exclusive multi-employer collective bargaining unit for all Employers employing these trades in the geographical jursidiction of this Agreement. This Agreement shall cover all work performed by Marble, Stone and Slate Polishers, Rubbers and Sawyers, Tile and Marble Setters Finishers, and Terrazzo Workers Finishers coming within the recognized jurisdiction of Tile, Marble and Terrazzo Finishers of the Local No. 2, New York of the Bricklayers and Allied Craftworkers. This Agreement shall cover all work performed by Tile, Marble and Terrazzo Workers coming within the recognized jurisdiction of Bricklayers and Allied Craftworkers Local No. 2 of

New York State Affiliated with our International Union AFL-CIO.

# ARTICLE II
# DURATION AND TERMINATION

Section 1.  It is mutually agreed by both parties to this agreement that ninety (90) days prior to the expiration of this agreement EITHER party may, in writing request CHANGES or TERMINATION of said contract.  If this is not done, this agreement shall remain in full force and effect for ONE ADDITIONAL YEAR.

# ARTICLE III
# WAGE AND FRINGE BENEFITS

Section 1. A., Schedule A. Tile, Marble, and Terrazzo Workers. The scale of wages to be paid Tile Workers, Marble Workers and Terrazzo Workers to be:

(1) Effective 6/1/97-distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess * | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $16.45 | 2.55 | 4.80 | .19 | -1.00 | .54 | -1.11 | .40 | $24.93 |
| 7/1/97-5/31/98 | 40 | $17.15 | 2.55 | 4.80 | .19 | -1.00 | .54 | -1.24 | .40 | $25.63 |
| 6/1/98 | 40 | There will be a $.70 increase distribution to be determined. | | | | | | | | |
| 6/1/99 | 40 | There will be a $.70 increase distribution to be determined. | | | | | | | | |

(2) Effective 6/1/97 Housing and Rehabilitation distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess * | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $12.34 | 2.55 | 4.80 | .19 | -1.00 | .54 | -1.11 | .40 | $20.82 |
| 7/1/97-5/31/98 | 40 | $12.86 | 2.55 | 4.80 | .19 | -1.00 | .54 | -1.24 | .40 | $21.34 |
| 6/1/98 | 40 | To be determined. | | | | | | | | |
| 6/1/99 | 40 | To be determined. | | | | | | | | |

Section 1. A., Schedule B. Tile, Marble, and Terrazzo Finishers. The scale of wages to be paid Tile Finishers, Marble Finishers and Terrazzo Finishers to be:

**Finishers Participating in Health Fund:**

(3) Effective 6/1/97-distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess * | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $14.15 | 2.45 | 3.40 | .19 | None | .18 | -1.08 | .40 | $20.77 |
| 7/1/97-5/31/98 | 40 | $14.70 | 2.55 | 3.40 | .19 | None | .29 | -1.21 | .40 | $21.53 |
| 6/1/99 | 40 | There will be a $.75 increase distribution to be determined | | | | | | | | |
| 6/1/96 | 40 | There will be a $.70 increase distribution to be determined. | | | | | | | | |

(4) Effective 6/1/97 Housing and Rehabilitation distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess * | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $9.73 | 2.45 | 3.40 | .19 | None | .18 | -1.08 | .40 | $16.37 |
| 7/1/97-5/31/98 | 40 | $11.03 | 2.55 | 3.40 | .19 | None | .29 | -1.21 | .40 | $17.86 |
| 6/1/98 | 40 | To be determined | | | | | | | | |
| 6/1/96 | 40 | To be determined | | | | | | | | |

5

# Finishers Not Participating in Health Fund:

(5) Effective 6/1/97-distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. | Work Assess | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $16.60 | None | 3.40 | .19 | None | .18 | -1.08 | .40 | $20.77 |
| 7/1/97-5/31/98 | 40 | $17.25 | None | 3.40 | .19 | None | .29 | -1.21 | .40 | $21.53 |
| 6/1/98 | 40 | There will be a $.75 increase distribution to be determined. | | | | | | | | |
| 6/1/99 | 40 | There will be a $.70 increase distribution to be determined. | | | | | | | | |

(6) Effective 6/1/97 Housing and Rehabilitation distribution as follows:

| Year | Hours Per Week | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. | Work Assess | Sup. Pens. | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/97-6/30/97 | 40 | $12.45 | None | 3.40 | .19 | None | .18 | -1.08 | .40 | $16.62 |
| 7/1/97-5/31/98 | 40 | $12.94 | None | 3.40 | .19 | None | .29 | -1.21 | .40 | $17.22 |
| 6/1/98 | 40 | To be determined. | | | | | | | | |
| 6/1/99 | 40 | To be determined. | | | | | | | | |

*Deducted from Basic Hourly Rate after taxes.

**Two cents ($.02) of this amount to be remitted to the Capital District Masonry Institute; eleven cents ($.11) to be remitted Bricklayers and Allied Craftworkers Local No. 2 Training and Education; and forty-one cents ($.41) to the International Masonry Institute.. PLEASE NOTE: All fringe benefits and other contributions shall be based on total hours worked.

6

B. The Union can reduce the hourly rate to increase fringe benefits contributions by equal amount contributed, provided the Association is given notice a reasonable time ahead of the effective date.

C. An employee subject to this Agreement who is laid off, discharged, or held up shall receive his/her wages in full at that time and allowed one-half hour to clean and pack his/her tools. Layoff slip must be provided in the envelope.

Employer shall give employee four (4) hours notice prior to layoff.

Employee shall give Employer four (4) hours notice before quitting.

Section 2. TRAVEL EXPENSE

Expenses of the employees required to work away from home shall be paid according to the following:

A. Starting point of Free Zone shall be the Albany County Airport Terminal. Upon the consent of the Local Union President/Field Representative, the starting point of Free Zone may be the City Hall in Plattsburgh, New York.

B. In the event an employee is transferred from one expense zone to another during the work week for the convenience of the Employer, and added expense is involved for additional room rent, the Employer shall reimburse the employee for his/her added expense.

C. In the event employees are required to be available and ready to work at the job site but cannot due

7

to conditions beyond their control, the expense rate per working day as set forth above shall be paid for each day such conditions exist.

D. Holidays

(1) <u>Tile, Marble, Terrazzo Workers.</u> Holidays which occur during the work week shall be considered for expense purposes as a working day. Employee must be on the job the working day before and the working day after the holiday to qualify for this provision.

(2) <u>Tile, Marble, Terrazzo Finishers.</u> When a holiday occurs on a Monday and/or on a Friday, such a holiday shall be considered a working day and an expense allowance of six dollars ($6.00) shall be paid for that day. Employee must be on the job the working day before and the working day after the holiday to qualify for this provision.

E. Employees should be notified if the job is less than one (1) week's duration.

F. (1) Effective 6/l/93:

20 mile Free Zone;

$.50 per mile one-way to a maximum of 65 miles from the Free Zone;

$60.00 per day over 65 miles from the Free Zone.

Travel monies will be paid only when actual travel expenses are incurred. Upon consent of the Local Union President/Field Representative, the starting point of Free Zone may be the City Hall in Plattsburgh, New York.

(2) <u>Tile, Marble, Terrazzo Finishers.</u> Out-of-Town Employers shall pay expenses calculated from the City Hall of Albany, New York. Upon consent of the Local Union President/Field Representative, the starting point of Free Zone may be the City Hall in Plattsburgh, New York.

Out-of-Town Employers for the purposes of this Agreement shall be Employers whose principal office is located outside the geographical area described in ARTICLE XVI, JURSIDICTION, A. Section 5. and B. Section 10.

G. Movement of Employees.

(1) When a Contractor comes from another jurisdiction for the purpose of performing work under this Agreement, said Contractor shall be allowed to bring one (1) key man. All other employees come from within the jurisdiction of the Agreement.

(2) All Contractors outside the jurisdiction of this Agreement, bidding work under this Agreement, are bound to pay traveling expenses as provided in Article III, Section 2.

Section 3. PARKING

Five dollars ($5.00) per day for one (1) vehicle inside the boundaries of: North-Clinton Avenue; West-Lark Street; South-Madison Avenue; East-Broadway in the City of Albany only. Driver is to furnish the Employer with receipt prior to payment.

Section 4.

There shall be a single rate for all Workers, except Foremen, on a single job employed by each Employer. Thers shall be a single rate for all Finishers, except Foremen, on a single job employed by each Employer.

# ARTICLE IV
# FRINGE BENEFIT FUNDS AND FRINGE BENEFIT RECEIPT COUPON

A. FRINGE BENEFIT FUNDS

Section 1. Health Fund

(1) Effective July 1, 1997, as determined by Union, Employers shall contribute an amount per hour for each hour worked to employees covered by this Agreement into the Bricklayers & Allied Craftworkers Health Benefit Funds.

The said Health Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

10

(2) <u>Tile, Marble, and Terrazzo Finishers.</u> Employers, who entered the trade under this Agreement prior to July 1, 1991, have the option to participate in the Bricklayers & Allied Craftworkers Local No. 2 Health Benefit Funds. Those employees who take this option will have the Employer contribute into the Bricklayers and Allied Craftworkers Local No. 2 Health Benefit Funds the amount specified in the article on Wages contained in this collective bargaining Agreement. Once the employee designates his/her choice to participate in the Fund, he/she <u>cannot</u> withdraw from it.

Section 2. Pension Fund

(1) The Employers agree to pay, as determined by Union, an amount for Pension per hour plus an amount per hour for supplemental I.U. Pension Fund for each hour for which the employee has worked for all employees covered by this Agreement, to the Bricklayers & Allied Craftworkers Benefit Funds. The contribution of Employers shall be used, exclusively, to provide pension benefits to eligible employees, in such form and amount as the Trustees of the Pension Fund may determine. The said Pension Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of said Agreement and Declaration of Trust,

together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

(2) <u>Tile, Marble, and Terrazzo Workers.</u>

(A) The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he/she had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declaration of Trusts.

(B) The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(C) For the purpose of this Article, each hour worked for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of Article III.

(D) Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, journeymen, apprentices, finishers, trainees and probationary employees.

(E) All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in this Article.  Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged the full costs of such audit.

(F) If the Employer fails to make any contribution specified in this Article, within seven (7) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees, interest and such liquidated damages as may be assessed by the Trustees.  The Union shall act in accordance with Article VIII.

(G) In the event that one (1) or more unions wish to change from the current Health Fund or All Joint Benefit Funds, the Employers covered by this Agreement shall contribute to the funds of the union's or unions' choice.

Section 3. <u>Tile, Marble, and Terrazzo Workers.</u> Savings Fund

The Employer shall continue to withhold the amount specified in Article III, Section 1 or Article XXVIII per hour, for each hour worked by employees in the geographical jurisdiction of the Union. The Fringe Benefit Receipt Coupon will be used as the system of withholding. The Savings Fund will be established and maintained in accordance with applicable law as a jointly administered trust fund under the Labor-Management Relations Act of 1947, as amended, Section 302, as it may be amended. The Savings Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of law. A copy of the said Agreement and Declaration of Trust, together with any amendment thereto, shall be considered as a part of this Agreement as though set forth here at length.

Section 4. Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund

A. The Employer shall contribute to a fund to be known as Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund (herein, 'Fund') contributions equal to the amount specified in Article III, Section 1, or Article XXVIII, Section 4, as determined by the Union, as appropriate, per hour, for

14

each hour worked by an employee under this Agreement in the Union's geographical jurisdiction. For this Article's purpose, an employee shall be deemed to have worked under this Agreement' only if he/she actually worked under it. The Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund is included in the Fringe Benefit Receipt Coupon.

B. The Fund will be established and maintained in accordance with applicable law as a jointly administered trust fund under Labor-Management Relations Act of 1947, as amended, Section 302, as it may be amended, to provide education, training, and skill development for eligible employees, as the Fund's Trustees shall determine in a plan to be developed by them within the Fund's capacity.

C. The Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of the said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

D. Tile, Marble, Terrazzo Workers and the Union will cooperate fully in: (a) constituting and establishing the Fund and obtaining any necessary govern-

15

ment approval for its income tax exemption and its operation; and (b) maintaining the Fund so it complies with all applicable law and so Employer's contributions to it will be deductible by Employer and not current income to any employee under any applicable federal, state or local tax law.

The Fund will bear all cost of its operations.

E. Mason's Promotional Fund:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by the Union, for each hour worked, shall be contributed to the Bricklayers and Allied Craftworkers Local No. 2 Promotion Fund. Said monies shall be distributed according to Article III, Section 1 A, Schedule A and B. These monies are included in the Training and Education portion of the Fringe Benefit Receipt Coupon.

F. International Masonry Institute:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by the Union, for each hour worked, shall be contributed to the International Masonry Institute. Said monies shall be distributed according to Article III, Section 1 A, Schedule A and B. These monies are included in the Training and Education portion of the Fringe Benefit Receipt Coupon.

G. Capital District Masonry Institute:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by Eastern Contractors Association, Inc., for each hour worked, shall be distributed according to Article III, Section 1 A,

Schedule A and B. These monies are included in the Training and Education portion of the Fringe Benefit Receipt Coupon.

Section 5. Construction Industry Advancement Program

(1) WHEREAS: Recognizing the need for providing a means whereby Employers can facilitate and supplement the financing of their activities, which include, but are not limited to, public relations, public education as applied to the construction industry, Employer expenses incurred in the promotion and stability of relations between labor and management, maintaining facilities and paying costs of arbitration and adjustments of grievances between the Employer and the Union, collection of Health Funds, Pension Funds, and Apprenticeship Training Programs, also other Employer activity engaged in from time to time, such as promotion of legitimate markets, standardization of contracts and research. It is mutually agreed by both parties to this Agreement that at no time shall any of these funds be used to support any anti-labor legislation, maintain a lawsuit against any local union of its international body or pay any salaries or expenses to any employee or Employer who is promoting non-union conditions, or subsidize any Employer during a strike or lockout.

The only salaries that can be paid are for employees needed to operate this fund. By no means is it to be used to supplement any other expenses of the Asso-

17

ciation so that it will release other monies for anti-labor promotions.

If it is found by an arbitrator selected under the procedure as outlined in Article VIII after grievance notice by the Bricklayers and Allied Craftworkers Local Union No. 2, New York that any of the provisions of this Article are being violated or these monies are being used to promote anti-union activities or the promotion of materials or other phases of the industry for a craft not a party to the Industry Fund, the Union shall have the right to terminate the Industry Fund Section of this Agreement in thirty (30) days, upon written notice to the Employers.

A designee from the Union shall receive a copy of the disbursements of the funds quarterly, and the books shall be opened for examination, although the Union acknowledges that it has no voice in the administering of the said fund. Now, therefore, in the interest of providing a means whereby Employers may avail themselves of the combined efforts in securing for themselves and their workers just and honorable dealings with the public they serve.

The Employer shall continue to pay to the Industry Fund of Eastern Contractors Association, Inc., 6 Airline Drive, Albany, New York 12205, a sum to be in an amount equal to one percent (1%) of the basic hourly rate, shown in Article III, Section 1 of the Agreement between Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, New York (building construction), per

hour worked, per employee covered by the terms of this Agreement. Said sum to be paid to said fund to be used for abovementioned purposes. Payments to the Fund are included in the Fringe Benefit Receipt Coupon Plan. Monthly report forms are necessary. The Union shall not be responsible for the collection of the Industry Fund.

In the event the laws allow the Union to have representation on any Board of Trustees, committee, group or board that administers such fund, then, in that event, the Union shall be allowed to designate such representatives as will give it equal representation in the management and administration of such fund.

The Union will provide Eastern Contractors Association, Inc. with a list of the agreements with any Employer who is not a member of Eastern Contractors Association, Inc.

(2) A. The Union shall receive quarterly reports of income and disbursements of the Construction Industry Advancement Program of Eastern New York (CIAP) fund and shall also receive a copy of the yearly audit of the CIAP fund.

B. No services or programs financed by the CIAP fund shall be made available to any person, firm or corporation that is not a member of Eastern Contractors Association, Inc., or is not signatory to the Eastern Contractors Association, Inc. agreements.

Section 6.  Deliquencies.  Employer failure to make the timely payment by the 15th of the month will be deliquent and subject to Article VIII.

B.  FRINGE BENEFIT RECEIPT COUPON

Section 1. Fringe Benefit Receipt Coupon:

A.  Each Employer shall make the payments as called for in Article III, Sections 1 A, Schedule A and B for each actual hour worked, through fringe benefit report as the method of collection.  Fringe Benefit Report Forms may be obtained from the Bricklayers and Allied Craftworkers Local No. 2 Albany, NY, Fund Office, 300 ,Centre Drive, Albany, NY 12203.

B.  Each Employer signatory to this Agreement shall, during the term of this Agreement, on or before the 15th day following the end of the month, pay to the Bricklayers and Allied Craftworkers Local No. 2, Albany, NY, Fund Office, the total sum of Employer contributions and payroll deductions as defined in this Agreement. The Monthly Report Form should be accompanied by a check or money order for the amount of the total fringe benefits owed for that month.

C. Effective June 1, 1997, after payment is submitted to the Fund Office, a Fringe Benefit Receipt Coupon will be issued to the employee by the Fund Office.  The Employer will be responsible to issue the employee the Fringe Benefit Receipt Coupon.

D. Fringe Benefit Receipt Coupon are purchased by mail.

20

Apprentices shall receive an amount of fringe benefit receipt coupon equal to the amount of hours worked. Once fringe benefit receipt coupon are mailed by the Fund Office, they become the employee's responsibility.

Cash payment to an employee in lieu of fringe benefit receipt coupon does not fulfill an Employer's obligation to the funds.

Employer failure to make the timely payment by the 15th of the month will be deliquent and subject to Article VIII.

# ARTICLE V
# HOURS

A.

Section 1. The regular working hours under this Agreement shall be eight (8) hours a day between the hours of 8:00 a.m. and 4:30 p.m., except as provided by Section 3 of this Article, and the regular working days are Monday, Tuesday, Wednesday, Thursday, and Friday. Any time worked after regular working hours, Monday through Friday and Saturday, to be paid for at the rate of time and one-half (1 1/2). Double time shall be paid for any hours worked Sunday, and legal holidays. Legal holidays are: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day. An

21

employee for whom work is scheduled or bid for times other than those enumerated above shall be paid double time.

Section 2.  Eight (8) hours shall constitute a work day.  If employee of his/her own volition or choice should leave the job before completing eight (8) hours of work, he/she will be paid only for the hours actually worked.  It shall also be the responsibility of each employee to report the actual hours worked.

Section 3.  Flexible starting time permissible between 6:00 a.m. and 8:00 a.m. by mutual consent of Employer and the employee.

Section 4.  In regards to a regular working days hours if an unusual condition presents itself, the matter shall be submitted to the Arbitration Committee for clarification and decision.

B. Tile, Marble, and Terrazzo Finishers.
Section 1.  Finishers, at work away from home, shall be guaranteed eight (8) hours pay.

Section 2.  Employees shall have five (5) minutes to clean tools at end of each day.

# ARTICLE VI
# SHIFT WORK AND OCCUPIED PREMISES

Section 1. On operations requiring two (2) shifts, the first shift shall work eight (8) hours and receive eight (8) hours pay, and the second shift shall work seven and one-half (7-1/2) hours and receive eight (8) hours pay. It is understood that there is no guarantee, that on a given day, one (1) shift might not vary due to weather, equipment breakdown or changes in operation schedules.

Section 2. A. On three (3) shift operations, the first, or day shift, shall be of eight (8) hours duration; the second shift shall be of seven and one-half (7-1/2) hours duration; and the third shift shall be of seven (7) hours duration. Each shift shall receive eight (8) hours pay.

B. On three-(3) shift operations, the third shift shall be considered as falling on the same day of the week as the first and second shift.

Section 2. On multiple shift work, the work week shall start no earlier than 6:00 a.m. The Employer shall set the starting time. Special cases of starting time may be set by mutual consent. All time worked in excess of the normal shift shall be considered overtime. Saturday, Sunday and Holidays may be

23

included, on which days, however, the appropriate overtime rate shall be paid. There shall be approximately an equal number of employees employed on each shift where practical.

Section 3. No individual employee shall be permitted to work on two (2) shifts except foremen or welders.

Section 4. In the event of an unusual condition, the starting time may be waived by mutual consent of the Employer and the Union. There shall be approximately an equal number of employees employed on each shift where practical.

Section 5. Occupied Premises-A shift may be worked in any occupied building outside of the regular work hours at the nine (9) hours pay for each eight (8) hours worked. On Saturdays, Sundays and holidays, work shall be performed at the appropriate overtime rate. The Employer is to notify the area Field Representative when this work will occur.

# ARTICLE VII
# PAYMENT

Section 1. All envelopes to be plainly marked as to name of Employer, employee, amount of wages,

hours worked, and all deductions such as Social Security, withholding tax, Savings Fund, including Health and Pension Fund payments. All employees are to be covered by compensation, unemployment insurance, Social Security, and disability benefits.

Section 2. Wages shall be paid by cash. Members of the Association may pay wages by check. Other Employers and the Union may agree to pay by check; if so, the following conditions shall be met:
- No more than two (2) days shall be withheld.
- Payment by check, no later than 4:30 p.m. on Thursday.
- Payment by cash, no later than 4:30 p.m. on Friday.

Section 3. Upon notice and demand by the Union, an individual Employer, without established credit, shall be required to secure a bond, or deposit cash to guarantee the payment of all wages and fringe benefits, as provided for under the terms of this Agreement.

Section 4. Each Employer, appearing on the delinquency reports for non-payment of fringe benefits, will be required to promptly post a surety bond or deposit cash to guarantee payment of wages and fringe benefits.

Section 5. The Employer shall pay wages at specified time. If Employer fails to do so, he/she may be liable for waiting time not to exceed two (2) days.

# ARTICLE VIII
# ARBITRATION

Section A.

All disputes which may arise under the terms and conditions growing out of this Agreement shall be settled by arbitration. There is to be no work stoppage of work pending settlement by arbitration. All requests for arbitration shall be: made in writing; and include a statement of alleged violations and specific provisions of the contract allegedly violated and detail all efforts to resolve the dispute; and be served upon the Employer or Union with a copy to the Association. Arbitration Board to consist of three (3) members selected by the Party of the First Part and three (3) members selected by the Party of the Second Part. Since the deliberation of this Arbitration Board will involve the peculiar facts, processes and customs of the Tile, Marble, and Terrazzo business, such members of the Party of the Second Part shall be Tile, Marble, and Terrazzo members of the Bricklayers and Allied Craftworkers Local No. 2 covered by this Agreement. The Party of the First Part shall have the right to have an equal amount of

members as the Party of the Second Part.  Business Agents of each local shall have the privilege of serving on the committee.  The decision of this Board shall be final and binding on both Parties.

Section B.

In the event that the Arbitration Board cannot agree upon the question in controversy, each Party shall designate an arbitrator; and the two (2) shall choose a third; and the third shall constitute an Arbitration Board.  Both Parties shall supply each arbitrator with all data and information bearing on the controversy, and the cost of such arbitration shall be borne equally by both Parties of this Agreement.  The award of such Arbitration Board shall be binding and final on both Parties who shall have no recourse to any other tribunal or procedure.  Pending the final award of such Board, it is hereby agreed that there shall be no strikes, lockouts or stoppage of work, individually or collectively, on any project involved in the controversy.

Section C.

Deliquencies.  In the event the Employer is deliquent in its payment of contributions due to the Local 2 BAC Benefit Funds for a period of seven (7) days the Union shall have the rights, (upon two (2) days notice to the prime Contractor and the Employer and the Association to (1) terminate this Agreement and/or (2) withdraw the services of it's members

from the Employer, and/or (3) strike or engage in a boycott with respect to such deliquent Employer.

If any economic action is taken by the Union, the Employers employees shall be paid wages and fringe benefits for all time lost from work due to their strike or withdrawal of services.

# ARTICLE IX
# BONDING

Section 1. Employer without established credit shall post a bond of ten thousand dollars ($10,000.00).

Section 2. Employers covered under this Agreement found delinquent in fringe benefit payments, or having been found delinquent previously, shall be required to deposit a ten thousand dollars ($10,000.00) bond with the Union to guarantee the payment of all wages and fringe benefits as provided by the terms of this Agreement, after review and decision made by the Joint Arbitration Board. The Employer covered under the terms of this Agreement will be required to post a ten thousand dollars ($10,000.00) bond with the Union.

# ARTICLE X
# NATIONAL AGREEMENT

It is understood and agreed by both Parties that the currently existing national agreement by and between the Tile Contractors Association of America and Bricklayers and Allied Craftworkers of America; shall form part of this Agreement. The Union shall provide copies of the above agreements upon request.

# ARTICLE XI
# FOREMEN

A. <u>Tile, Marble, and Terrazzo Workers.</u>
Section 1. All foremen shall be mechanics in their respective trades with at least six (6) years experience. When five (5) mechanics are employed and up to nine (9) mechanics, the foreman shall receive at least one dollar ($1.00) per hour more than the Journeyman's wage. When ten (10) or more mechanics are employed, he/she shall receive at least two dollars ($2.00) per hour more than the Journeyman's wage; and he/she shall not use the tools of the trade. When two (2) or more mechanics are employed, one (1) of them shall be foreman.

B. <u>Tile, Marble, and Terrazzo Finishers.</u>
Section 1. All foremen shall be qualified and experienced in the trade.

Section 2. When three (3) or more finishers are employed on a project, one (1) shall be appointed foreman.

Section 3. When ten (10) or more finishers are employed on a project, the foreman shall receive at least fifty cents ($.50) per hour above the Finishers' scale.

Section 4. There shall be no restriction as to the appointment by the Contractor of a foreman. The foreman must be competent in the particular line of work to be accomplished.

Section 5. The Party of the First Part may have the privilege to pay the appointed foreman, regardless of the number of members employed, additional compensation not to exceed twenty-five cents ($.25) per hour above the finishers' rate, when the circumstances in his/her judgment requires it.

Section 6. The finisher foreman shall not be restricted from performing regular duties, and he/she must consult with worker foreman so that proper coordination and efficiency are maintained on all jobs.

Section 7. The finisher foreman shall work under the direction of the superintendent and worker foreman at all times.

# ARTICLE XII
# ASSOCIATION SECURITY

Section 1.    The Union recognizes Eastern Contractors Association, Inc., as the exclusive bargaining representative of all members.

Section 2.    The Association represents that it is duly authorized by its designating members hiring Bricklayers to enter into this collective bargaining Agreement, that in so doing they are authorized to bind such designating members to the terms and condition of membership in said Association, that such designating members shall continue to be bound by terms or, shall upon admission to the said Association, after the date of execution of this Agreement, agree to be bound from that date forward by all terms and conditions of this Agreement.

Section 3.    There shall be one (1) bargaining unit for all Employers bound by this Agreement for the geographicla and trade jursidictions covered herein including any individual Employers who are not designating members of Eastern Contractors Asso-

ciation, Inc. but who sign this Agreement or agree to be bound to it.

The management party hereto shall be considered the bargaining unit.

Section 4.   No modification, variation, or waiver of any terms or provision herein shall be valid unless agreed upon in writing by both the Association and the Union.   With the exception of project labor agreements or project agreements, where the Union will make every effort to include the Association in the negotiation of the project labor agreement or project agreements.   The Union willsupply the Association with a copy of any project labor agreement, it negotiates to which the Association is not a party.

# ARTICLE XIII
# PROTECTION

The Union shall not afford to any other Employer with whom it signs a contract, terms or conditions more favorable than those incorporated in this contract.

# ARTICLE XIV
# SEVERABILITY

If any provision of this Agreement shall violate any applicable stature or is held invalid by any court or government agency having jurisdiction, such invalidity shall not affect the validity of the remainder of this Agreement and such provision or Article shall be void.

# ARTICLE XV
# JURISDICTION

A. <u>Tile, Marble, and Terrazzo Worker.</u>
Section 1. All surfaces to receive tile from metal lath, brick and/or block walls starting with a scratch coat and including mortar bed, setting bed and/or float coat shall be the work of the Tile Worker, thus enabling him/her to control with accuracy the dimensions of his/her finished product. This shall apply to the cold wall and wet wall methods. Where patching of existing gypsum plaster surfaces is required, it shall remain the work of the plasterer.

Section 2. The mechanical grouting of all ceramic walls and floors and the honing, buffing, polishing and patching of all marble products, either by hand or by hand held power equipment shall be the work of

33

the I.U. of B.A.C. employees, signatory to this Agreement. Also, all chemical process work including desotex, magnesite, polyester terrazzo, all epoxy and seamless work shall be performed by the employee referred to in this Agreement. This will include the mixing, dressing, sealing, and use of all machinery, tools, appliances or methods which may be practical in the performance of their duties.

Section 3. All interlocking paving brick, brick pavers and hex brick or any other shape of brick regardless, set in a sand bed, bituminous bed or any other type of underlayment, shall be the work of the Tile and Terrazzo Worker.

Section 4. This work shall be assigned by virtue of a Jurisdictional Agreement between the crafts involved and, being part of this Agreement, such arrangement is binding on the Parties signatory to this Agreement.

Section 5. <u>Geographical Area</u>. Bricklayers and Allied Craftworkers Local Union No. 2, New York, Tile, Marble and Terrazzo Workers geographical jurisdiction of this local shall be as defined in ARTICLE I of the Agreement between Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, New York (building construction). That portion of Schoharie County west of the southeast corner of Schenectady

County, running southwest of the south boundary line of the Village of Middleburg, then northwest to the Otsego County line. All of the Counties of: Albany, Clinton, Columbia, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Warren, and Washington.

B. <u>Tile, Marble, and Terrazzo Finishers.</u> WORKING CONDITIONS

Section 1. The Employer on any job shall determine the number of finishers to be employed, and the established customs of each trade as outlined below shall be performed and maintained by the Finishers. These are in general but not limited to the following:

Section 2. Finishers shall do all the cleaning and grouting, mixing, handling and distributing of all materials used by a Marble Mason in connection with marble, slate, precast terrazzo, etc.

Section 3. Finishers shall do all the mixing, grouting, cleaning, handling and distribution of materials used by a Tile Worker in connection with ceramic tile, quarry tile, pavers, etc.

Section 4. Finishers shall do all the mixing of sand and cement, terrazzo chips, including all compositions, and handle and distribute all materials used by the Terrazzo Worker.

Section 5. Finishers shall do all the grinding, polishing, grouting, cleaning and waxing on all terrazzo (and/or composition) put down by the Terrazzo Worker.

Section 6. The Parties hereto shall use their best efforts in the industry's and public's interest to increase production and reduce costs by maintaining more hour output and to use all machinery, tools, appliances or methods which may be practical.

Section 7. No Employer, nor anyone having financial interest in a company, shall perform the duties of a Finisher.

Section 8. All out-of-town contractors permitted to bring one (1) key man only.

Section 9. No Finisher shall be required to report to the shop before 7:30 a.m. or after 4:30 p.m. to receive orders.

Section 10. <u>JURISDICTIONAL AREA</u>

The jurisdictional area of Tile, Marble and Terrazzo Finishers of the Bricklayers and Allied Craftworkers Local No. 2, New York as conceded to their charter by the International Association, is as follows:

New York State Counties:  Albany, Clinton, Columbia, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Schenectady, Schoharie, Saratoga, Warren. and Washington,

Also in New York State:

The eastern part of Montgomery County, east of Canajoharie, including the township of Fonda.

The eastern part of Fulton County, including the township of Gloversville to north county line.

The southeast part of Otsego County, southeast of Cooperstown, but including the township of Maryland.

The eastern part of Delaware County, east of Cooks Falls, but including the townships of Delhi, Meredith and Davenport Center.

Massachusetts County:  Berkshire.


# ARTICLE XVI
# INTERPRETATION

The Joint Committee reserves the right to make final interpretation of any of the Articles of this Agreement, subject to the rules for arbitration set forth in Article VIII.


# ARTICLE XVII
# STEWARDS

A. <u>Tile, Marble, and Terrazzo Workers.</u>

Section 1. Stewards must be appointed in all shops by the Field Representative or President of the Un-

ion, who shall notify the Employer or his/her representative of such appointment. The steward shall be a member of the Party of the Second Part. Before a shop steward is discharged, the Field Representative/Local President has to be notified. If the Field Representative/Local President and Employer cannot agree on the discharge of the steward, the question shall be referred to the Joint Arbitration Committee.

Section 2. The stewards shall represent the Union's interest and work with the tools.

Section 3. Pending a hearing and decision by the Joint Arbitration Committee, if the shop steward is wrongfully discharged, no pay shall be lost by him/her. The first employee on the job is responsible for the pension and health record reports.

B. .Tile, Marble, and Terrazzo Finishers.
Section 1. It is recognized that the Union has the right to appoint the job steward. The Field Representative/Local President must inform the Employer, or his/her representative, of such appointment. stewards shall be allowed reasonable time to perform their duties on the job.

# ARTICLE XVIII
# TOOLS

A. <u>Tile, Marble, Terrazzo Workers.</u>
Section 1.   Light leads and notched trowels to be furnished by Employer.  Chisels, cutting wheels to be sharpened by the Employer.  Employer to be responsible for sharpening only chisels and wheels dulled by work on his/her project.

Section 2.   Employer to furnish all power tools.  Employee shall take reasonable care to maintain and return same.

Section 3.   When working with epoxy, Employer shall furnish necessary protective items of clothing.

B. <u>Tile, Marble, and Terrazzo Finishers</u>
Section 1.   Employer shall provide protective clothing in periods of inclement weather or due to conditions on the job.

Section 2.   Finisher must have the proper tools to perform his/her job (such as, trowel, hammer, chisel, rubber gloves, etc.).

C.

Section 1.   When working with epoxy, the Employer shall furnish necessary protective items of clothing.

Section 2.   Employer shall provide rain gear.   Employee shall take adequate care of same and return same to Employer inproper condition.

Section 3. PROTECTION.

Any Employer of six (6) or more employees is required to supply suitable arrangements under lock and key for storing employee's tools against fire and theft from force of entry.   Employee is to use reasonable precautions when storing his/her tools and equipment outside of regular working hours.   Employer is to cover such loss by proper methods.

# ARTICLE XIX
# PRESERVATION OF WORK

Section 1. (a) It is contrary to the sound business principles and spirit of this Agreement for Employers to work with the tools, thus depriving workmen of employment and in no case shall more than one (1) member of a firm be permitted to work with the tools.

(b) Only one (1) member of the firm (i.e. partner, officer, stockholder or owner) will be allowed to work with the tools provided, however, that when there is work for only one (1) mechanic, no member of the firm will be allowed to work with the tools.

(c) In the event it is claimed that this clause is being violated by any Employer or the Union, any party to the Agreement or the Association may file a grievance under the Arbitration provisions of this Agreement.

(d) A "Contractor" or "Employer" within the meaning of this Article includes any individual or the spouse of any individual who - no matter what the form of the enterprise may be - is alone or jointly a real party in interest in the contracting establishment or, as legal or undisclosed or disclosed beneficial owner, or corporate officer or director or otherwise directly or indirectly manages, directs, or controls the business.

(e) Where the one (1) member of the firm to work with tools is designated by such firm, he/she shall be identified by name in advance to both Parties.

(f) No sole proprietor, partner, stockholder or officer of any Employer shall perform any work when it comes within the jurisdiction of Union 2, unless at least one (1) journeyperson is working at each shop.

(g) An owner, proprietor, partner, stockholder or officer of any Employer may perform work with the tools, only on the following types of structures: rehabilitation residential projects/fast food service;

multiple housing, and any type of high rise rehabilitation construction.

(h) The provisions included in this Article dealing with "Preservation of Work" shall be effective commencing May 1, 1971.

Section 2.

(1) Effective May 1, 1970, an Employer working with tools shall be restricted against overtime work in such capacity. The privilege of such overtime work shall be reserved for Journeymen.

(2) Any employee who goes into the contracting business shall not work for any other Contractor, nor shall any Contractor employ any such person. Also, if the individual decides to discontinue contracting, he/she is ineligible to work as a Journeyman for another Contractor for a period of one (1) year from the time he/she went into the contracting business.

(a) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform any work of the type covered by this Agreement, under its own name or under the name of another, or as a corporation, company partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises

42

either directly or indirectly (such as through family members) any substantial degree of ownership, management or control, the economic terms and conditions of this Agreement shall be applicable to all such work.

(b) As a remedy for violations of this Section, the Arbitration Board or the Arbitrator shall, at the request of the Union, require an Employer to pay the equivalent of wages and fringe benefits lost by employees covered by this Agreement, as a result of such violations to each such employee and to the appropriate fringe benefit trusts respectively. Provision of this remedy herein does not make such remedy the exclusive remedy available to the Union for violations of this section; nor does it make the same or other remedies unavailable to the Union for violations of this section on other articles of this Agreement.

# ARTICLE XX
# COFFEE BREAK

A.  <u>Tile, Marble, and Terrazzo Workers.</u> A ten (10) minute coffee break will be allowed in the morning. A ten (10) minute break in the afternoon.

Employees shall remain at place of their work.

B. <u>Tile, Marble, and Terrazzo Finishers.</u> A ten (10) minute coffee break in the morning and in the afternoon is permitted, when coffee is available in the immediate vicinity of the job site. Such privilege to continue unless abused by employee.

# ARTICLE XXI
# SUBCONTRACTING

A. <u>Tile, Marble, and Terrazzo Workers.</u>
<u>Section A</u>

(1) The Contractor subletting any portion of a job or work on a job site shall as a condition preceding such subletting, request the subcontractor to meet with the representatives of the Union for the purpose of complying with the provisions of the Agreement for such work.

(2) In addition, the Contractor shall provide in any subcontract that the subcontractor shall conform to the terms of this Agreement insofar as wages, hours and working conditions are concerned.

(3) If it is found that the subcontractor is not complying with Paragraph (1) above, the Union shall give the Contractor forty (40) hours notice in writing before any action is taken.

44

(4) Responsibility of the Contractor for loss of wages and benefits shall be limited to the amount of monies due to the subcontractor by the contractor as of the date of written notice.

## Section B

The Employer agrees that this Agreement will bind and be for the benefit of any corporation or company which may exist or be formed in which the Employer or its principals may have a substantial financial or proprietary interest. If such company is engaged in construction work coming within the work jurisdiction of the Unions party hereto and any other work normally covered by this Agreement.

## Section C

The General Contractor, Prime Contractor, Builder, or Subcontractor agrees that they will not subcontract any work covered by this Agreement to any of their employees in order to circumvent the payment of wages, fringe benefits and working conditions, provided for herein.

## Section D

The Employer agrees that when subcontracting work covered by this Agreement, which is to be performed within the geographical area covered by this Agreement and at the site of construction, alterations, or repair of a building, structure, road or other work, he/she will subcontract such work only

to an Employer or person who will agree to comply with all the terms and conditions of this Agreement.

# ARTICLE XXII
# NOTICE

A. <u>Tile, Marble, and Terrazzo Workers.</u> The Field Representative/Local President of each respective Union shall be notified by the Contractor prior to commencement of work.

# ARTICLE XXIII
# IMPROVERS

A. <u>Tile, Marble, and Terrazzo Workers</u>. Improvers working under the jursidiction of this Agreement will receive seventy-five percent (75%) of the mechanics wage, plus all fringe benefits where allowable by law and for no more than six (6) months. Then the Worker-Improver must register as a Worker apprentice with due consideration for time served. Worker - Improvers who become apprentices shall serve an apprenticeship of at least one (1) year. The Employer shall notify the Union of the hiring of any Improvers.

B.  <u>Tile, Marble, and Terrazzo Finishers</u>.  Improvers working under the jurisdiction of this Agreement will receive seventy-five percent (75%) of the Finishers wage, plus all fringe benefits where allowable by law and for no more than six (6) months.  Then the Finisher-Improver must register as a Finisher apprentice with due consideration for time served.  Finisher - Improvers who become apprentices shall serve an apprenticeship of at least one (1) year.  The Employer shall notify the Union of the hiring of any Improvers.

# ARTICLE XXIV
# MOONLIGHTING AND LUMPING

Any member working under the jurisdiction of this Agreement found moonlighting or lumping will be prosecuted under the International Union of Bricklayers and Allied Craftworkers Constitution and Codes.

# ARTICLE XXV
# EMPLOYEE ASSESSMENT
# DEDUCTION

Section 1. A. Employers bound by this Agreement agree to deduct from the wages of employees cov-

ered by this Agreement, who have submitted a signed Employee Assessment Deduction Authorization as hereinafter set forth, for Employee Assessment (not including initiation fees, fines or special assessments), the sum equal to the amount shown in Article III or Article XXVIII*, per straight-time hour worked, or the appropriate overtime rate worked, to said employee while said Employee Assessment Deduction Authorization is in effect and has not been duly revoked.

**(\*This amount is to be deducted from wages after the appropriate taxes have been computed.)**

B. The above monies will be included in the Fringe Benefit Monthly Report Forms, furnished by the Union, and are to be filled out by the Employer and submitted to the Capital Area Bricklayers and Allied Craftworkers Health Benefit Funds office.

Section 2. The Local Union will provide the Employee Assessment Deduction Authorization forms which will state:

# COMBINED BACPAC & IU & LOCAL CHECK-OFF AUTHORIZATION

I hereby authorize any of the various Individual Employers who are signatory to a collective bargaining agreement with any Bricklayers & Allied Craftworkers Local Union. District Council, the International Union, or any other BAC affiliate, and by whom I may be employed during the term of such agreement, or any renewal or extension, or any subsequent agreement, to deduct from my wages and transmit monthly to said Union the sum which the Union has specifies from time to time, as the portion of my union dues to said Union, to the International Union, or any other BAC affiliate, subject to check-off through procedures conforming to applicable law.  This authorization shall be irrevocable for a period  of  one (1) year  following the date it was signed or until the current applicable collective bargaining agreement expires, whichever occurs sooner.  This authorization shall be automatically renewed from year to year, unless sixty (60) days prior to the termination or annual renewal date I revoke the authorization by written notice to the Union and to the Individual Employer by whom I am employed.

I also hereby authorize the Employer (as described above) to deduct from my wages the sum of two cents ($.02) for each hour paid and to transmit that amount in the manner prescribed by the Union to the Bricklayers & Allied Craftworkers Political Action Committee (BACPAC).  This authorization is signed freely and voluntarily and not out of fear of reprisal, and on the understanding that BACPAC is engaged in a joint fund raising effort with the Committee on Political Education of the American Federation of Labor & Congress of Industrial Organizations, that BACPAC will use the money contributed to that effort to make political contributions and expenditures in connection with the federal, state and local elections, and that this voluntary authorization may be revoked at any time by written notice to the Employer and BACPAC of a desire to do so.

49

- To authorize the deduction of both working dues and BACPAC contribution, please sign and date this form.
- To limit the authorization of the deduction of either the working dues or BACPAC contribution, please check the appropriate box, sign and date this form.
-

**Date** _____,**19**__

**Signature** _____

**Social Security Number** _____

Contributions or gifts to the Bricklayers and Allied Craftworkers and/or political action committee (BACPAC) are not tax deductible as charitable contributions for federal income tax purposes. However, they may be tax deductible under other provisions of the Internal Revenue Code.

**Section 3. The Local Union will provide the Benefit and Defense Fund Authorization forms which will state:**

50

# BENEFIT AND DEFENSE FUND AUTHORIZATION

This is to authorize any of the individual Employers who are covered by a collective bargaining agreement with BAC Local No. 2, Albany, NY, to deduct from my pay the sum of ten cents ($.10) for each hour worked and to transmit that amount to the BAC Local No. 2, Albany, NY Benefit and Defense Fund. This authorization is signed freely and voluntarily and without fear of reprisal, and with the understanding that the Defense and Benefit fund will be used solely for the purpose of the Fund. The above deduction shall be made from my earned pay on each regularly scheduled payday and shall be remitted to the BAC Local No. 2, Albany, NY Work Assessment fund at the same time and in the same manner as the Pension and Welfare Fund Contributions. This authorization shall be automatically renewed from year to year, unless sixty (60) prior to the renewal date I revoke this authorization by written notice to the Union and to the individual Employer by whom I am employed.

**Date** _____

**Social Security Number** _____

**Signature** _____

Copies of this Authorization card will be made available upon request.

# ARTICLE XXVI
# APPRENTICE WAGES & WORKING CONDITIONS

Section 1. <u>Tile, Marble, and Terrazzo Workers.</u> No Employer shall have the privilege of having a worker apprentice until he/she has been a recognized Contractor of Tile, Marble, Terrazzo Industry for one (1) year.   The term of Apprentices shall be three (3) years.

Section 2. When finisher becomes a worker apprentice, there will be a mutual agreement between Employer and Union regarding starting wages.

Section 3.

(1) <u>Tile, Marble, and Terrazzo Workers</u>.  The rates for apprentices are:

| TERM | WAGE |
|------|------|
| 1st Six Months | 50% of Journeyperson's rate |
| 2nd Six Months | 60% of Journeyperson's rate |
| 3rd Six Months | 70% of Journeyperson's rate |
| 4th Six Months | 80% of Journeyperson's rate |
| 5th Six Months | 90% of Journeyperson's rate |
| 6th Six Months | 90% of Journeyperson's rate |

(2) <u>Tile, Marble, and Terrazzo Finishers</u>.  The rates for apprentices are:

| TERM | WAGE |
|------|------|
| 1st Six Months | 50% of Journeyperson's rate |
| 2nd Six Months | 60% of Journeyperson's rate |
| 3rd Six Months | 75% of Journeyperson's rate |
| 4th Six Months | 90% of Journeyperson's rate |

Section 4. <u>Tile, Marble, and Terrazzo Workers.</u> Worker apprentices shall receive an amount of receipt coupons equal to the amount of hours worked in wages.

No worker apprentice is permitted to work alone unless the Employer feels that the worker apprentice is capable.

53

Section 5. <u>Tile, Marble, and Terrazzo Finishers.</u> In case of a layoff on any job by a Contractor, the apprentice finishers will be laid off before any finishers are laid off provided the finisher is qualified to perform the work.

Section 6.  Joint Apprenticeship Committee composed of equal numbers of Employers, as chosen by the Association, and the Union Representatives.  All apprentices shall be governed by the Joint Apprenticeship Committee.  Any questions that may arise must be taken before the Joint Apprenticeship Committee for a decision.  The Union will open its membership for apprentices provided that the Employers Committee can show the need for additional masons and provided that the Employer will provide the employment needed for the apprentices as the Joint Apprenticeship Committee trains and produces the apprentices.

The Employer cannot lay off a mason apprentice unless he/she has given the Joint Apprenticeship Committee or Union Business Agent two (2) days' notice.  If Employer does not provide said notice, he/she is subject to fine or reprisal by the Joint Apprenticeship Committee.  The apprentice cannot leave the employ of the Employer unless he/she has provided the Joint Apprenticeship Committee with the same two (2) days' notice.  All apprentices must be registered with the Joint Apprenticeship Committee and the New York State Department of Labor.

# ARTICLE XXVII
# SHOW - UP TIME

In the event employee is required to be available for work but cannot due to the fault of the Employer, show-up time of one (1) hour shall prevail.

# ARTICLE XXVIII
# TRAVELING CONTRACTORS

A. <u>Tile, Marble, and Terrazzo Finishers.</u>
When the Employer has any work specified in Article XVI of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the Union, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area.  Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of the Article but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed, plus all contributions specified in the job site local Agreement.  The Employer shall in all other matters be governed by the provisions established in the job site local Agreement.  If employ-

55

ees are sent to work on a project in an area in Article XVI of this Agreement, the full terms and conditions of this Agreement shall apply.

# ARTICLE XXIX
# UNION SECURITY

Section 1. A. <u>All Employers.</u>

(1). <u>Tile Workers.</u> It is understood and agreed by and between the Parties hereto that, as a condition of continued employment, all persons who are hereafter employed in the unit which is the subject of this Agreement shall make application to the Union after seven (7) days from the date of their employment, after demonstrating qualifications as craftworkers of the trade that the continued employment by the Employer in said unit of persons who are already members of the Union shall be conditioned upon those persons continuing their payment of the periodic dues of the Union.

(2). <u>Tile Finishers</u>. The failure of any person to make application to the Union within said period of time shall obligate the Employer, upon notice from the Union to the such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person.

B. <u>Non-Association Employers.</u> - Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein. The Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jursidiction of the Union, unless and until such time as the Union loses its status as the employee's exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

C. <u>Eastern Contractors Association, Inc.</u> - All firms which are members of Eastern Contractors Association, Inc. and are parties to the Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, Tile Workers and Tile Finishers Agreement, or which have designated to Eastern Contractors Association, Inc. bargaining rights for the Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2 Tile Workers and Tile Finishers Agreement will be covered by the Eastern Contractors Association, Inc.'s recognition policy for the Bricklayers and Allied Craftworkers Local Union No. 2.

# ARTICLE XXX
# NON-DISCRIMINATION

The Parties mutually agree that they will comply and cooperate with all federal, state, and relevant local laws and regulations dealing with non-discrimination in employment and hiring.

# ARTICLE XXXI
# RESIDENTIAL AND
# REHABILITATION

**Section 1.   Work Covered By This Article.**

A. This Article shall apply to all rehabilitation work on residential structures.  For the purpose of this Article, "rehabilitation" shall be defined to include all work, including demolition, repair and alteration on any existing structure which is intended for residential use.

B. On new housing, this Article shall be applicable only to site construction of all new work done by the Employer on one (1) family, two (2) family, row housing and garden type homes or apartments which are not more than four (4) stories above ground level and are used as dwellings.

C. Any work which is not specifically set forth in Paragraphs A and B above shall not be covered by this Housing and Rehabilitation Article, but instead,

58

shall be covered by and performed pursuant to the standard collective bargaining agreement between the Association and the Union.

Section 2. Hours Of Work.

A. The regular work week of the employees shall be between 7:00 a.m. Monday through Friday, to 5:00 p.m., consisting of a five-day work week. The starting time schedule shall be declared at the beginning of the job. The regular working hours each day from Monday through Friday shall be eight (8) hours between the hours of 7:00 a.m. and 5:00 p.m. with one-half (1/2) hour off for lunch between the hours of 11:00 a.m. and 1:00 p.m. By mutual consent of Employer and Union, an employee may work on the Saturday following the Friday of the work week. No employee is obliged to work make-up time. Make-up time applies to work lost due to inclement weather only. (Shall be at the straight hourly rate.)

B. Work earlier than 7:00 a.m.: If an earlier starting time is desired, it shall be at the discretion of the Employer and the Union.

C. Any overtime work performed, outside of the regular work day or work week as specified in this Article, shall be performed by employees covered under this Article. First preference for overtime work shall given to employees on the specific projects.

Section 3. Overtime and Holidays:

A. All work performed in excess of eight (8) hours per day between the hours of 7:00 a.m. and 5:00 p.m., Monday through Friday; all work performed before 7:00 a.m. Monday; and all work performed on New Year's Day, Independence Day, Memorial Day, Thanksgiving Day, and Christmas Day shall be paid for at one and one-half (1 1/2) times the employee's straight time hourly rate of pay.

B. No work on Labor Day: No work shall be performed on Labor Day except to save life or property, and then shall be paid at the double time rate.

Section 4. Straight Time Hourly Wage Rate.

A. The minimum straight hourly wage rate of all employees covered by this Article is contained in Article III, Section 1 A, Schedule B. Wage rates are computed at seventy-five percent (75%) of the basic hourly rate as contained in Article III, Section 1 A, Schedule A. Refer to Article XXVIII, Section 3 for apprentice wage rates.

Section 5.

A. All employees in the workforce on September 1, 1994, the effective date of the Residential and Rehabilitation rate, will be "grandfathered" in the basic hourly wage rate. A "grandfathered" employee may work voluntarily at the Residential and Rehabilitation rate, but cannot be compelled to do so.

B.   Employers shall have the right to hire if the Union cannot supply employees to work at the Residential and Rehabilitation rate within forty-eight (48) hours.   All employees shall make application to the Union after seven (7) days from the date of their employment, as per Article XXXI.

# ARTICLE XXXII
# LABOR - MANAGEMENT

The parties agree to continue to mutually support in the Upstate New York Trowel Trades Labor-Management Committee and other ongoing labor-management activities.

# ARTICLE XXXIII
# DRUG TESTING

1.  If as a condition of working on a project, drug testing is required of the employee, Eastern Contractors Association, Inc. and the Bricklayers and Allied Craftworkers Local Union No. 2 shall meet and shall discuss a project agreement for Drug Testing.

2.  Eastern Contractors Association, Inc. and the Bricklayers and Allied Craftworkers Local Union No. 2 shall have a special committee to develop a

model program on drug testing during the life of this Agreement.

# ARTICLE XXXIV
# ASSOCIATION AND UNION SIGNATURE PAGE

**IN WITNESS WHEREOF,** we have hereunto set our hands and attached the official seals of our respective organizations on this 31st Day of May 1997.

**TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL NO. 2, NEW YORK**

**EASTERN CONTRACTORS ASSOCIATION, INC.**

Garry Hamlin
Robert Leach
James Rafferty
Al Catalano

Victor Mion, Jr.
Anthony Marcio
Anthony Roman
John Pludrzynski

# ADDENDUM 1

## ECA/BASIC TRADES WORKERS' COMPENSATION PROGRAM

The parties have adopted as apart of this Agreement the ECA/Basic Trades Workers' Compensation Program including the Workers' Compensation Alternative Disputes Resolution Addendum.

## WORKERS' COMPENSATION ALTERNATIVE DISPUTES RESOLUTION ADDENDUM

### AGREEMENT PREAMBLE

This Agreement is made and entered into the 28th day of February, 1996 by and between Eastern Contractors Association, Inc. (hereinafter referred to as the Association) and International Union of Bricklayers and Allied Craftworkers (Local Nos. 2, 8, 11, and 45), United Brotherhood of Carpenters and Joiners of America (Local No. 370), International Association of Bridge, Structural and Ornamental Iron Workers (Local No. 12), Laborers' International Union of North America (Local Nos. 157 and 190), International Union of Operating Engineers (Local No. 106) and International Brotherhood of Teamsters (Local No. 294) (hereinafter referred to as the Unions) and is an Addendum to the Building; Heavy & Highway (Bricklayers and Allied CRAFTWORKERS); and Tile, Marble and Terrazzo Finishers and Workers

(Bricklayers and Allied Craftworkers) collective bargaining agreements between the Association and the Unions.

## ARTICLE I
## PURPOSE

It is the intent of this Agreement to provide employees who incur injuries or suffer occupational diseases as defined under the New York Workers' Compensation Law (hereinafter referred to as the Law) with improved access to high quality medical care, and to reduce the number and severity of disputes and provide an efficient and effective method for dealing with disputes resulting from such injuries and diseases by utilizing the provisions of subdivision 2-C of Section 25 of the Law to establish a system of medical care delivery and dispute prevention and resolution which will be used by all employees covered by this Agreement.

## ARTICLE II
## SCOPE OF AGREEMENT

a) This Agreement shall apply only to an Employer that is signatory to at least one (1) of the collective bargaining agreements between the Association and the Unions listed above in Article I and that chooses to participate in this Agreement and to its employees who are covered under such agreements. The Employer shall serve written notification on the Asso-

64

ciation, the Union representing the Employer's employees and on Ulico Casualty Company (hereinafter referred to as the Prime Carrier) of the Employer's application to participate in this Agreement. Initial and continuing participation shall be subject to the approval of the Joint Labor-Management Oversight Committee established in Article V and of the Prime Carrier. An Employer insured with a workers' compensation carrier other than the Prime Carrier or a self-insured Employer must demonstrate that it will be able to provide claims management, medical management and program representative services consistent with this Agreement and satisfactory to the Oversight Committee and the Prime Carrier and must agree to pay the applicable costs for dispute resolution services, medical network operation and other related program expenses.

In accordance with Rule 314.2(c), any participating Employers who are insured by a carrier other than Ulico, Inc. (the "Prime Carrier") shall provide the WCB with a statement signed by their insurance carrier expressing the carriers' consent to the workers' compensation claims provisions contained in the Agreement. Participating Employers who do not contract with an insurance carrier shall submit proof of self-insurance on WCB form SI - 12.

The Prime Carrier or other participating carrier or self-insured Employer, as appropriate, shall provide prompt written notification of the Employers who elect to utilize the provisions of the alternative dis-

putes resolution Agreement and an estimate of the numbers of employees thereby bound to the alternative dispute resolution process to the WCB.

b) This Agreement shall apply only to workers' compensation claims for compensable injuries and occupational diseases, as defined by the Law, sustained by employees of the Employer covered by this Agreement, during their employment by the Employer, on or after the effective date of this Agreement, irrespective of the date of the claim. This Agreement shall not be construed to modify the provisions of the Labor law nor shall it in any way modify claimant's rights to commence action based upon negligence, violations of Labor Law, violations of OSHA or otherwise against any third party.

c) This Agreement shall remain in effect for not less than one (1) year from the date of its execution. Thereafter, it shall continue and remain in force during the full term of the collective bargaining agreements to which it is an Addendum, subject to the termination notification requirements set forth in those agreements. Upon termination of coverage of this Agreement with respect to an individual employee or to all employees of an Employer, unless this Agreement or the underlying collective bargaining agreements are being renegotiated, the Employer and the employee(s) shall become fully subject to the provisions of the Law to the same extent as they were prior to the implementation of this Agreement, provided, however, that any claim arising from an acci-

66

dent or illness sustained on or before the date of termination of coverage of this Agreement shall continue to be covered by the terms of this Agreement for a period of two (2) years and further provided that when a claim has been adjudicated under this Agreement, the Employer and the claimant shall be estopped from raising identical issues before the Workers' Compensation Board. On termination of the Agreement, copies of all records related to claims adjudicated under the Agreement shall be transferred by the responsible carrier to the Workers' Compensation Board. This Agreement shall not remain in effect beyond December 31, 2000 unless authorized by Law.

d) This Agreement represents the complete understanding of the parties with regard to the subject matter dealt with herein.

e) In any instance of conflict, the provisions of this Agreement shall take precedence over provisions of the Law, so far as permitted by the provisions of subdivision 2-C of Section 25 of the Law.

f) This Agreement shall not be construed to modify the provisions of the Law related to notice, claim filing, first report of injury, notification of controversy, notification of the cessation of benefits, payment of benefits, payment of attorney or licensed representative fees or any other provision of the Law or its supporting case law, except as specifically set forth in this Agreement.

g) Notwithstanding any other provision of this Agreement, it is hereby agreed that for other than office or clerical employees, that no employee not covered under a collective bargaining agreement with at least one (1) of the signatory Unions shall be covered under this alternative dispute resolution agreement, nor shall be permitted coverage under the alternative dispute resolution for resolution of claims. Any party that fails to file for arbitration within thirty (30) calendar days after the completion of the mediation process as provided above shall forfeit its right to arbitrate under the terms of this Agreement. This provision shall not be in effect unless authorized by Law.

## ARTICLE III
## AUTHORIZED MEDICAL PROVIDERS

a) All medical and hospital services required by employees subject to this Agreement as the result of compensable injury or occupational disease, shall be furnished by health care providers and facilities negotiated by the parties to this Agreement, hereinafter referred to as authorized providers. A list of the authorized providers shall be made available to all employees subject to this Agreement. The list can be changed any time by mutual agreement of the parties to this Agreement. All authorized providers, other than health care facilities, shall be board certified in their respective specialties. The parties to this

Agreement may agree on a case-by-case basis to permit a board eligible health care provider to act as an authorized provider as permitted by WCB.

b) In case of emergency when no authorized provider is available, the employee may seek treatment from a health care provider or facility not otherwise authorized by this Agreement, to provide treatment during the emergency. Responsibility for treatment shall be transferred to an authorized provider as soon as possible, consistent with sound medical practices.

c) After selecting an authorized provider to furnish treatment, an employee may change once to another authorized provider. When referred by the authorized provider to another provider in a particular specialty, the employee may also change once to another authorized provider in such specialty. Additional changes will be made only with the agreement of the Employer.

d) Neither the Association, the Employer nor the Union(s) shall be responsible for the cost of medical services furnished by a health care professional or facility not authorized pursuant to this Agreement.

e) The list of authorized providers shall contain sufficient numbers of providers for each of the specialties which the parties to this Agreement believe are required to respond to the needs of employees subject to this Agreement. In the event that an authorized provider furnishing treatment to an employee determines that consultation or treatment is necessary from a specialty for which no authorized

provider has been selected through this Agreement, or in the event that distance makes it impractical for treatment from the authorized provider, the authorized provider shall select the additional specialist or the additional provider who offers treatment at a practical distance for the employee.

f) All prescription medicines required by employees subject to this Agreement as a result of injury or occupational disease shall be furnished by the Employer through a prescription medicine provider agreed to by the parties to this Agreement. This prescription medicine may be provided by the prescription medicine provider.

g) Either the Employer or the employee may request a second opinion from an authorized provider regarding diagnosis, treatment, evaluation or related issue. A third opinion may be requested through the mediator or arbitrator if the first two do not agree.

h) Both the Employer and the employee shall be bound by the opinions and recommendations of the authorized providers selected in accordance with this Agreement. In the event of disagreement with an authorized provider's findings or opinions, the sole recourse shall be to obtain a second opinion from another authorized provider and to present the opinions through the dispute prevention and resolution procedures established in this Agreement.

I) The parties to this Agreement agree that it is in their mutual best interest to establish a schedule limiting the fees which the authorized providers may

charge for providing documents and narrative reports, and will work with the authorized providers to establish such a schedule.

j) If the underlying compensability of a claim is being controverted by the Employer, the employee is not bound by this Article pending the resolution of the controversy.  Any issue of compensability shall be resolved under Article IV of this Agreement.  If the claim is found to be compensable, the Employer will be responsible for payment of the health care rendered to the employee, at the applicable fee schedule.

## ARTICLE IV
## DISPUTE  PREVENTION AND RESOLUTION

a) The dispute prevention and resolution program will consist of three components:

> Program Representative
> Mediation
> Arbitration

b) This program shall be used in place of and to the exclusion of the New York State Workers' Compensation Board (WCB) conciliation, he/shearing and review processes.  Any request made to the WCB for conciliation, he/shearing or review of any claim subject to this Agreement will immediately be referred by the WCB to the program established by this Agreement.

c) The Program Representative, mediator(s) and the arbitrator(s) will be selected through negotiation among the parties to this Agreement and will be paid by the Employer, except that the costs for those employers insured by the Prime Carrier will be paid by the Prime Carrier. All individuals considered for mediator or arbitrator shall disclose to the Joint Labor-Management Oversight Committee any current or previous employment or affiliation by the Prime Carrier or any other carrier participating in this Agreement.

d) An employee covered by this Agreement who believes that he/she is not receiving workers' compensation benefits to which he/she is entitled, including medical and hospital services, shall notify the Program Representative. If the issue cannot be resolved to the satisfaction of the employee within five (5) working days, the employee may apply for mediation. The parties may extend the five (5) working day period by mutual agreement. No issue will proceed to mediation without first being presented to the Program Representative. The response of the Program Representative to the employee shall be explained in terms which are readily understandable by the employee. The Program Representative will maintain a log recording all activity, including the date of each notification and the date of each response.

e) Application for mediation shall be made not more than sixty (60) calendar days after the Program

Representative has responded to the employee's notification. Any application for mediation shall immediately be assigned to a mediator selected under this Agreement. The mediator will contact the parties to the dispute, including the Employer insurance carrier, and take whatever steps the mediator deems reasonable to bring the dispute to an agreed conclusion. The Joint Labor-Management Oversight Committee will determine the rules by which mediations are conducted.

f) Mediation shall be completed in not more than fourteen (14) calendar days from the date of referral, except that in no event shall an issue be permitted to proceed beyond mediation until and unless the moving party cooperates with the mediator and the mediation process. The Employer agrees to cooperate fully in the dispute resolution process and to provide all relevant documents requested by the employee, the mediator or the arbitrator.

g) Within thirty (30) calendar days after the completion of the mediation process, any party not satisfied with the outcome may file with the mediator a request that the matter be referred for arbitration. Upon receipt of such a request, the mediator shall immediately refer the matter to an arbitrator agreed to by the parties to this Agreement for arbitration. The arbitration date will be set with sufficient advance notice to permit the parties to retain and/or consult with legal counsel.

h) Arbitration will be conducted pursuant to the rules of the American Arbitration Association, using an arbitrator agreed to by the parties to this Agreement. Unless the parties to the matter otherwise agree, arbitration proceedings shall be completed within thirty (30) calendar days after referral, and an arbitration decision rendered within ten (10) calendar days of the completion of the proceedings.

I) No written or oral offer, finding or recommendation made during the mediation process by any party or mediator shall be admissible in the arbitration proceedings except by mutual agreement of the parties.

j) The mediator or arbitrator may in his/her or he/she sole discretion appoint an authorized health care provider to assist in the resolution of any medical issue, the cost to be paid by the Employer.

k) Either party to a claim may obtain representation by an attorney or licensed representative at any time. The attorney(s) or licensed representative(s) will be paid under the same circumstances and in the same manner and amounts as provided for under the Law. Neither party will be permitted to be represented by legal counsel at mediation. The fact that the representative of the employee, the Employer or the Employer's workers' compensation insurance carrier's has had legal training or is a licensed attorney shall not bar such person from participating in mediation unless he or she seeks to participate on the basis of a lawyer-client relationship. All communication between the mediator and the parties shall be directly

with the parties (unless precluded by language or disability) and not through legal counsel.

l) Determination and/or approval of attorneys'/licensed representatives' fees, approval of agreements and other similar actions required under the Law to be performed by a referee or a Board Member shall be the responsibility of the mediator or arbitrator. The arbitrator shall also have the authority to enforce the penalty provisions contained in Section 25 (2)(a), (2)(c), and (3)(c) of the Law with regard to only those penalties paid to the employee.

m) The decision and award of the Arbitrator shall be final, except as provided for in paragraph D of subdivision 2-C of Section 25 of the Law.

n) Any party to a claim may refuse once a mediator or arbitrator named to resolve the claim. The refusal shall be in writing and shall be made within two (2) working days of party receiving the name of the mediator or arbitrator assigned to the claim. A party to a claim may only exercise this option once at the mediation step and once at the arbitration step.

## ARTICLE V
## JOINT LABOR-MANAGEMENT OVERSIGHT COMMITTEE

a) The Association and the Unions establish a Joint Labor-Management Oversight Committee to represent their respective interests in the administration of this Program. The Committee's Labor membership

shall consist of one (1) designated representative from each of the unions set forth in Article I. The Management membership shall consist of an equal number of representatives designated by the Association from participating employers. The Oversight Committee shall designate six (6) members, three (3) Labor and three (3) Management, to serve as a Working Group with authority to act at the direction of the entire Joint Labor-Management Oversight Committee. The Prime Carrier shall serve as a non-voting, ex officio member of both the Joint Labor-Management Oversight Committee and the subsidiary Working Group. The Joint Labor-Management Oversight Committee shall operate on a consensus basis.

The Program Coordinator will be an Association staff member and will serve as Chair of meetings of the Joint Labor Management Oversight Committee and the Working Group.

b) The Joint Labor-Management Oversight Committee shall take all actions required to implement the letter and intent of this Agreement, including, but not limited to, the selection of Program Representative, mediator(s), arbitrator(s), network providers and medical providers. Additionally, the Joint Labor-Management Oversight Committee shall receive reports, both in written and oral forms, from the Prime Carrier and any other participating carrier and the Working Group, shall receive complaints and investigate and respond appropriately, and shall respond to

requests for systemic information whenever practicable. Accordingly, the parties hereto consent to the agreements, decision and other actions taken by the Joint Labor-Management Oversight Committee and the Working Group consistent with this Agreement and the exigencies of operating the program for the benefit of the Employees and the Employers.

## ARTICLE VI
## MISCELLANEOUS ISSUES

a) All payments required to be made by the Employer pursuant to this Agreement shall, in accordance with the Law, be made by its workers' compensation carrier. Similarly, all actions required by the Law to be undertaken by the insurance carrier rather than the employer shall be performed by the Employer's workers' compensation insurance carrier.

b) The Employer shall take whatever steps are necessary to insure that an Employer representative is available to fulfill the Employers' obligations until all claims subject to this Agreement are resolved.

c) If any provision of this Agreement or its application to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of this Agreement than can be given effect without the invalid provision or application, and to this end the provisions of this Agreement are declared to be severable.

d) If any other contractor association and its representative union(s) wish to participate in the Program established under this Agreement, they may apply to the Joint Labor-Management Oversight Committee established in Article V. If approved for participation, the association and the union(s) may be entitled to name only one (1) additional Management member and only one (1) additional Union member, respectively, to serve on the Joint Labor-Management Oversight Committee.

e) It is expressly agreed and understood that under no circumstances shall the Association(s) or the Union(s) signatory hereto become liable for providing any workers' compensation benefits by virtue of their participation in this Agreement, including but not limited to the payment of claims, related costs or the provision of services.

f) In a contested claim if the employee prevails at the arbitration step the Prime Carrier or any other participating carrier shall pay the attorney's/licensed representatives' fees of the employee's attorney in addition to any award made to the employee.

g) The parties agree to review the workers' compensation cost savings obtained by Employers participating in this Agreement with the goal of sharing a portion of those savings after an increase in competitiveness, if any, with the Unions. The threshold for determining increased competitiveness through workers' compensation cost savings shall be the Prime Carrier or any other participating insurer es-

tablishing rates, dividends, and premiums equivalent to the most competitive available from a commercial carrier, State Insurance Fund, or Safety Group outside this Agreement. After reaching the threshold for determining increased competitiveness, a portion of those workers' compensation cost savings will be shared through supplementing the statutory benefits or some other formula as determined by the parties and the Prime Carrier and other participating insurers.

The Prime Carrier and any other participating insurer will observe the reporting requirements in Article V b of this Agreement. At least one (1) written report will be provided prior to the first of the expirations of the current collective bargaining agreements between the Association and the Unions on April 30, 1997 (Bricklayers and Allied Craftworkers Local No. 2 - Building, Carpenters Local No. 370, Iron Workers Local No. 12, Laborers' Local No. 157 & 190, International Union Operating Engineers Local No. 106, Brotherhood of Teamsters Local No. 294), May 31, 1997 (Bricklayers and Allied Craftworkers Locals Nos. 2, 8, 11, 45), and May 31, 1997 (Bricklayers and Allied Craftworkers - Tile, Marble and Terrazzo Finishers and Workers), respectively.

The Association and the Unions will endeavor together to explore the development of additional or enhanced features by the Prime Carrier and any other participating carrier for inclusion in this Agreement.

h) MULTIPLE EMPLOYER CLAIMS. Medical care that is the responsibility of the current Employer and the collectively bargained program will be furnished through the program's medical network. If the claim involves a medical condition for which the employee was previously treated, and the prior treating physician is not a member of the program medical network, the physician will, at the claimant's written request to the Program Representative, immediately be put through the credentialling process and after successful completion added to the program medical network. If an issue arises involving only the current Employer, it will be dealt with through the Agreements alternative disputes resolution process. If an issue arises that involves the current Employer and a prior Employer who is not party to the Agreement, it will be dealt with through the WCB process. If an issue arises that involves the current Employer and a prior Employer who is party to the Agreement, it will be dealt with through the Agreement alternative dispute resolution process.

I) The parties agree that safety is of the greatest importance in the prevention of injuries in workers' compensation. The Association and the Prime Carrier and other participating insurers will develop a Safety Recognition Program including Employer and employee awards. The Employers and the Unions agree to promote safety and undertake any safety recommendations made by the Prime Carrier and other participating insurers.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date and year set forth, in the City of Albany, County of Albany, State of New York.

ACCEPTED FOR THE UNIONS for and on behalf of the signatory Unions:

International Union of Bricklayers and Allied Craftworkers (Local No. 2)
Garry Hamlin, President

International Union of Bricklayers and Allied Craftworkers (Local No. 8)
Mark Babbage, President

International Union of Bricklayers and Allied Craftworkers (Local No. 11)
Steve Remington, Business Manager

International Union of Bricklayers and Allied Craftworkers (Local No. 45)
William R. Wright Jr., Business Manager

United Brotherhood of Carpenters and Joiners of America (Local No. 370)
John Stefanik, Business Representative

International Association of Bridge, Structural and Ornamental Iron Workers (Local No. 12)
Michael Burns, Business Manager

81

Laborers' International
Union of North America
(Local No. 157)
Robert L. Pollard,
Business Manager

Laborers' International
Union of North America
(Local No. 190)
Samuel M. Fresina,
Business Manager

International Union of
Operating Engineers
(Local No. 106)
Gene Messercola,
Business Manager
/President

International Brotherhood
of Teamsters
(Local No. 294)
Howard Bennett,
President

ACCEPTED FOR THE ASSOCIATION for and on
behalf of the signatory Employers:

Charles McGrath
J.D. Gilbert
Vic Mion Jr.
Toni Cristo
Wayne Brownell

Tom Murray
John Di Guilio
David Rubin
Bruce Hodkins
Walt Gould

ACCEPTED      FOR      ULICO      CASUALTY
COMPANY:

Todd Rowland

82

# NON-ASSOCIATION EMPLOYER SIGNATURE PAGE

I, the undersigned, as Independent Employer of Tile, Marble & Terrazzo Finishers and Workers, having read the accompanying Agreement between Eastern Contractors Association, Inc. and the Tile, Marble and Terrazzo Finishers and Workers of the Bricklayers and Allied Craftworkers Local Union No. 2, New York, that are signatory to this Agreement, agree to abide by the terms of the same in consideration of receiving the same guarantee and privileges as members of Eastern Contractors Association, Inc.

The undersigned Independent Employer further agrees that any and all disputes that may arise between the Union and the Employer concerning the application or interpretation of the terms of this Agreement, shall be settled by arbitration pursuant to Article VIII of the attached Agreement before an Arbitration Board to consist of three (3) members selected by the Union and three (3) members selected by Eastern Contractors Association, Inc.

The undersigned Employer has read and hereby approves the Collective Bargaining Agreement dated May 31, 1997 between Eastern Contractors Association, Inc. and Tile, Marble and Terrazzo Finishers and Workers of the Bricklayers and Allied Craftworkers Local Union No. 2, and any successor Col-

83

lective Bargaining Agreement between said parties and herewith accepts and becomes one of the parties thereto and agrees to be bound by all its terms and conditions.   The undersigned Employer recognizes Eastern Contractors Association, Inc. as the exclusive multi-employer collective bargaining unit for all Employers employing these trades in the geographical jursidiction of this Agreement.

The life of this signed Independent Agreement is to be coextensive with the terms and conditions set out or as they shall be set out from time to time in the aforementioned Collective Bargaining Agreement with the aforementioned parties thereto, and shall continue in effect for such terms.   The Union shall give written notice to the Association of the signing of this Independent Agreement by an Employer.

This signed Independent Agreement shall be binding upon the Employer named herein and its successor and assigns, and no provision herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer, assignment, encumbrance, joint venture, or any combination or other disposition of the Corporation or Company.

The undersigned Employer further agrees to payment of contributions to the Health Fund, Pension Funds; Mason's Promotion, International Masonry Institute, capital District Masonry institute, Construction Industry Advancement Program, and as appropriate Savings Fund and Training and Education Fund: and the undersigned Employer agrees to

84

be bound by the applicable Declaration of Trust and hereby irrevocably designates as its representative on the Board of Trustees such Employer Trustees together with their successors as selected in the manner provided with the Agreement and Declaration of Trust and agrees to be bound by all action taken by the said Employer Trustees pursuant to the said Agreement and Declaration of Trust.

We hereby accept the provisions of the above contract. The Union and said Company do hereby agree to abide by and enforce same.

Please forward a completed copy of these pages to:

Bricklayers and Allied
Craftworkers Local No. 2
300 Centre Drive
Albany, NY 12203

Eastern Contractors
Association, Inc.
6 Airline Drive
Albany NY 12205

_____

Company Name

_____

Address

_____

Telephone Number

_____

Authorized Officer Signature

_____

Federal Registration Number

_____

Insurance Carrier

_____

Policy Number

_____

Unemployment Insurance Number

_____

New York State Disability Benefits Number

_____

New York State Disability Carrier's Name

_____

Local President's/Field Representative's Signature

_____

Local Number, State

_____

Date

# NOTES

# EXHIBIT B

# TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS

AGREEMENT
BETWEEN

## EASTERN CONTRACTORS ASSOCIATION, INC.

AND

## BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL UNION NO. 2, NEW YORK

JUNE 1, 2000 - MAY 31, 2002

NOTE: Revisions, if any, will be printed in the back of the book.



# TABLE OF CONTENTS

| ARTICLE | SUBJECT | PAGE |
|---------|---------|------|
|  | PREAMBLE | 1 |
| I | BARGAINING | 2 |
| II | DURATION AND TERMINATION | 3 |
| III | WAGE AND FRINGE BENEFITS | 4 |
| IV | FRINGE BENEFIT FUNDS AND FRINGE BENEFIT RECEIPT COUPON | 9 |
| V | HOURS | 25 |
| VI | SHIFT WORK AND OCCUPIED PREMISES | 26 |
| VII | PAYMENT | 28 |
| VIII | ARBITRATION | 30 |
| IX | BONDING | 32 |
| X | NATIONAL AGREEMENT | 33 |
| XI | FOREMEN | 33 |
| XII | ASSOCIATION SECURITY | 35 |
| XIII | PROTECTION | 36 |
| XIV | SEVERABILITY | 37 |
| XV | JURISDICTION | 37 |
| XVI | INTERPRETATION | 41 |
| XVII | STEWARDS | 42 |
| XVIII | TOOLS | 43 |

XIX        PRESERVATION OF WORK                    44

XX         COFFEE BREAK                            48

XXI        SUBCONTRACTING                          48

XXII       NOTICE                                  50

XXIII      ORGANIZING                              50

XXIV       MOONLIGHTING AND LUMPING                52

XXV        SAFETY TRAINING                         52

XXVI       APPRENTICE WAGES AND WORKING
           CONDITIONS                              54

XXVII      SHOW - UP TIME                          58

XXVIII     TRAVELING CONTRACTORS                   58

XXIX       UNION SECURITY                          59

XXX        NON-DISCRIMINATION                      61

XXXI       LABOR - MANAGEMENT                      61

XXXII      DRUG TESTING                            62

XXXIII     ASSOCIATION AND UNION SIGNATURE
           PAGE                                    63

           APPENDIX 1                              64

           NON-ASSOCIATION EMPLOYER
           SIGNATURE PAGE                          85

# TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS

## AGREEMENT

## BETWEEN

# EASTERN CONTRACTORS ASSOCIATION, INC.

## AND

# BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL UNION NO. 2, NEW YORK

## *PREAMBLE*

This Agreement, made and entered into on the 24th day of May 2000, by and between Eastern Contractors Association, Inc., Party of the First Part, and Bricklayers and Allied Craftworkers Local Union No. 2, New York for the Tile, Marble and Terrazzo Finishers and Workers, Party of the Second Part, shall become operative and effective on the first day of June 2000 and continue in full force and effect until May 31, 2002.

This Agreement shall cover all work performed by Tile, Marble, and Terrazzo Workers and Finishers engaged in on-site construction within the contract limit lines where the intended use is a building or building project or being necessary for the use of a building or access to a building where the principal use is not a highway.

**Unless indicated all provisions of this Agreement apply to both Tile, Marble and Terrazzo Finishers and Tile, Marble and Terrazzo Workers.**

# ARTICLE I
# BARGAINING

Section 1. In accordance with and subject to the provisions of the Labor-Management Relations Act of 1947, as amended, the Party of the First Part recognizes the Party of the Second Part as the exclusive bargaining agent for all employees included under the terms and conditions of employment and all other matters covered by this Agreement. The Party of the Second Part recognizes the Party of the First Part as the exclusive multi-employer collective bargaining unit for all Employers employing these trades in the geographical jurisdiction of this Agreement. This Agreement shall cover all work performed by Marble, Stone and Slate Polishers, Rubbers and Sawyers, Tile and Marble Set-

ters Finishers, and Terrazzo Workers Finishers coming within the recognized jurisdiction of Tile, Marble and Terrazzo Finishers of the Local No. 2, New York of the Bricklayers and Allied Craftworkers. This Agreement shall cover all work performed by Tile, Marble and Terrazzo Workers coming within the recognized jurisdiction of Bricklayers and Allied Craftworkers Local No. 2 of New York State Affiliated with our International Union AFL-CIO.

# ARTICLE II
# DURATION AND TERMINATION

Section 1. It is mutually agreed by both parties to this agreement that ninety (90) days prior to the expiration of this agreement EITHER party may, in writing request CHANGES or TERMINATION of said contract. If this is not done, this agreement shall remain in full force and effect for ONE ADDITIONAL YEAR.

# ARTICLE III
# WAGE AND FRINGE BENEFITS

Section 1. A., Schedule A. Tile, Marble, and Terrazzo Workers. The scale of wages to be paid Tile Workers, Marble Workers and Terrazzo Workers to be:

Effective 6/1/00-distribution as follows:

| Year | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess.* | Sup. Pens | Total |
|------|------|------|------|------|------|------|------|------|------|
| 6/1/00-9/30/00 | $19.05 | 2.75 | 4.90 | .21 | -1.00 | .64 | -.97 | .40 | $27.95 |
| 10/1/00-5/31/01 | $19.85 | 2.75 | 4.90 | .21 | -1.00 | .64 | -1.01 | .40 | $28.75 |
| 6/1/01 | There will be a $1.55 increase distribution to be determined. | | | | | | | | |

*Deducted from Basic Hourly Rate after taxes.

**Two cents ($.02) of this amount to be remitted to the Capital District Masonry Institute; six cents ($.06) to be remitted Bricklayers and Allied Craftworkers Local No. 2 Training and Education; and fifty-six cents ($.56) to the International Masonry Institute. PLEASE NOTE: All other contributions shall be based on total hours worked.

fringe benefits and

4

Section 1. A., Schedule B. Tile, Marble, and Terrazzo Finishers. The scale of wages to be paid Tile Finishers, Marble Finishers and Terrazzo Finishers to be:

**Finishers Participating in Health Fund**, Effective 6/1/00-distribution as follows:

| Year | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess.* | Sup. Pens | Total |
|---|---|---|---|---|---|---|---|---|---|
| 6/1/00-9/30/00 | $16.80 | 2.75 | 3.40 | .21 | None | .39 | -.85 | .40 | $23.95 |
| 10/1/00-5/31/01 | $17.60 | 2.75 | 3.40 | .21 | None | .39 | -.90 | .40 | $24.75 |
| 6/1/01 | There will be a $1.55 increase distribution to be determined. | | | | | | | | |

**Finishers Not Participating in Health Fund:** Effective 6/1/00-distribution as follows:

| Year | Basic Hourly Rate | Health Fund | Pens. Fund | I.F. | Savings Fund * | T.&E. ** | Work Assess.* | Sup. Pens | Total |
|---|---|---|---|---|---|---|---|---|---|
| 6/1/00-9/30/00 | $19.55 | None | 3.40 | .21 | None | .39 | -.95 | .40 | $23.95 |
| 10/1/00-5/31/01 | $20.35 | None | 3.40 | .21 | None | .39 | -.98 | .40 | $24.75 |
| 6/1/01 | There will be a $1.55 increase distribution to be determined. | | | | | | | | |

*Deducted from Basic Hourly Rate after taxes.

**Two cents ($.02) of this amount to be remitted to the Capital District Masonry Institute; six cents ($.06) to be remitted Bricklayers and Allied Craftworkers Local No. 2 Training and Education and thirty-one cents ($.31) to the International Masonry Institute.  PLEASE NOTE: All fringe benefits and other contributions shall be based on total hours worked.

Section 1. A., Schedule C. Wage Increases.

Effective 6/1/00 $ .90

Effective 10/1/00          $ .80

Effective 6/1/01 $1.55

B. The Union can reduce the hourly rate to increase fringe benefits contributions by equal amount contributed, provided the Association is given notice a reasonable time ahead of the effective date.

C. An employee subject to this Agreement who is laid off, discharged, or held up shall receive his/her wages in full at that time and allowed one-half hour to clean and pack his/her tools. Layoff slip must be provided in the envelope.

Employer shall give employee four (4) hours notice prior to layoff.

Employee shall give Employer four (4) hours notice before quitting.

Section 2. TRAVEL EXPENSE

Expenses of the employees required to work away from home shall be paid according to the following:

A. Starting point of Free Zone shall be the Albany County Airport Terminal.

B. In the event an employee is transferred from one expense zone to another during the work week for the convenience of the Employer, and added expense is involved for additional room rent, the Employer shall

6

reimburse the employee for his/her added expense.

C. In the event employees are required to be available and ready to work at the job site but cannot due to conditions beyond their control, the expense rate per working day as set forth above shall be paid for each day such conditions exist. Upon request travel expenses necessary for room and board shall be paid up front.

If required to travel in a company vehicle, there shall be seats and seatbelts for all travelers.

D. Holidays

(1) Tile, Marble, Terrazzo Workers. Holidays which occur during the work week shall be considered for expense purposes as a working day. Employee must be on the job the working day before and the working day after the holiday to qualify for this provision.

(2) Tile, Marble, Terrazzo Finishers. When a holiday occurs on a Monday and/or on a Friday, such a holiday shall be considered a working day and an expense allowance of six dollars ($6.00) shall be paid for that day. Employee must be on the job the working day before and the working day after the holiday to qualify for this provision.

E. Employees should be notified if the job is less than one (1) week's duration.

F. (1) Effective 6/l/93:

20 mile Free Zone;

$.50 per mile one-way to a maximum of 65 miles from the Free Zone;

$60.00 per day over 65 miles from the Free Zone.

Travel monies will be paid only when actual travel expenses are incurred.

(2) <u>Tile, Marble, Terrazzo Finishers.</u> Out-of-Town Employers shall pay expenses calculated from the City Hall of Albany, New York. Out-of-Town Employers for the purposes of this Agreement shall be Employers whose principal office is located outside the geographical area described in ARTICLE XVI, JURISDICTION, A. Section 5. and B. Section 10.

G. Movement of Employees.

(1) When a Contractor comes from another jurisdiction for the purpose of performing work under this Agreement, said Contractor shall be allowed to bring one (1) key man. All other employees come from within the jurisdiction of the Agreement.

(2) All Contractors outside the jurisdiction of this Agreement, bidding work under this Agreement, are bound to pay traveling expenses as provided in Article III, Section 2.

Section 3. PARKING

Five dollars ($5.00) per day for one (1) vehicle inside the boundaries of: North-Clinton Avenue; West-Lark

Street; South-Madison Avenue; East-Broadway in the City of Albany only. Driver is to furnish the Employer with receipt prior to payment.

Section 4.

There shall be a single rate for all Workers, except Foremen, on a single job employed by each Employer. There shall be a single rate for all Finishers, except Foremen, on a single job employed by each Employer.

Section 5.

The parties agree that all compensation (in this Article) whether hourly wage rate or fringe benefits and other contributions listed are wages or are derived from wages.

# ARTICLE IV
# FRINGE BENEFIT FUNDS AND FRINGE BENEFIT RECEIPT COUPON

A. FRINGE BENEFIT FUNDS

Section 1. Health Fund

(1) Effective July 1, 2000, as determined by Union, Employers shall contribute an amount per hour for each hour worked to employees covered by this Agreement into the Bricklayers & Allied Craftworkers Health Benefit Funds.

The said Health Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

(2) <u>Tile, Marble, and Terrazzo Finishers.</u> Employers, who entered the trade under this Agreement prior to July 1, 1991, have the option to participate in the Bricklayers & Allied Craftworkers Local No. 2 Health Benefit Funds. Those employees who take this option will have the Employer contribute into the Bricklayers and Allied Craftworkers Local No. 2 Health Benefit Funds the amount specified in the article on Wages contained in this collective bargaining Agreement. Once the employee designates his/her choice to participate in the Fund, he/she <u>cannot</u> withdraw from it.

Section 2. Pension Fund

(1) The Employers agree to pay, as determined by Union, an amount for Pension per hour plus an amount per hour for supplemental I.U. Pension Fund for each hour for which the employee has worked for all employees covered by this Agreement, to the Bricklayers

& Allied Craftworkers Benefit Funds. The contribution of Employers shall be used, exclusively, to provide pension benefits to eligible employees, in such form and amount as the Trustees of the Pension Fund may determine. The said Pension Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

(2) <u>Tile, Marble, and Terrazzo Workers.</u>

(A) The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he/she had actually signed the individual documents and further agrees to be bound by all actions taken by the Trustees of these funds pursuant to said Agreements and Declaration of Trusts.

(B) The Employer hereby irrevocably designates as its representative on the above stated Boards of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

(C) For the purpose of this Article, each hour worked for, including hours attributable to show-up time, and all other hours for which pay is received by

the employee in accordance with this Agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1. of Article III.

(D) Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this Agreement.  This includes, but is not limited to, journeymen, apprentices, finishers, trainees and probationary employees.

(E) All contributions shall be made at such time and in such a manner as the Trustees require; and the Trustees shall have the authority to have an independent Certified Public Accountant audit the time books, payroll and wage records of the Employer  for the purpose of determining the accuracy of contributions to the funds designated in this Article.  Any Employer found, as a result of an audit ordered by the Trustees of one of the fringe benefit funds, to have been substantially inaccurate in reporting shall be charged the full costs of such audit.

(F) If the Employer fails to make any contribution specified in this Article, within seven (7) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due

together with attorney's fees, interest and such liquidated damages as may be assessed by the Trustees. The Union shall act in accordance with Article VIII.

(G) In the event that one (1) or more unions wish to change from the current Health Fund or All Joint Benefit Funds, the Employers covered by this Agreement shall contribute to the funds of the union's or unions' choice.

Section 3. <u>Tile, Marble, and Terrazzo Workers.</u> Savings Fund

The Employer shall continue to withhold the amount specified in Article III, Section 1 or Article XXVIII per hour, for each hour worked by employees in the geographical jurisdiction of the Union. The Fringe Benefit Receipt Coupon will be used as the system of withholding. The Savings Fund will be established and maintained in accordance with applicable law as a jointly administered trust fund under the Labor-Management Relations Act of 1947, as amended, Section 302, as it may be amended. The Savings Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of law. A copy of the said Agreement and Declaration of Trust, together with any amendment thereto, shall be considered as a part of this

Agreement as though set forth here at length.

Section 4.  Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund

A. The Employer shall contribute to a fund to be known as Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund (herein, 'Fund') contributions equal to the amount specified in Article III, Section 1, or Article XXVIII, Section 4, as determined by the Union, as appropriate, per hour, for each hour worked by an employee under this Agreement in the Union's geographical jurisdiction.  For this Article's purpose, an employee shall be deemed to have worked under this Agreement' only if he/she actually worked under it.  The Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund is included in the Fringe Benefit Receipt Coupon.

B. The Fund will be established and maintained in accordance with applicable law as a jointly administered trust fund under Labor-Management Relations Act of 1947, as amended, Section 302, as it may be amended, to provide education, training, and skill development for eligible employees, as the Fund's Trustees shall determine in a plan to be developed by them within the Fund's capacity.

C. The Bricklayers and Allied Craftworkers Local No. 2 Training and Education Fund shall be administered pursuant to an Agreement and Declaration of Trust

14

administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements of the law. A copy of the said Agreement and Declaration of Trust, together with any amendments thereto, shall be considered as a part of this Agreement as though set forth here at length.

D. Tile, Marble, Terrazzo Workers and the Union will cooperate fully in: (a) constituting and establishing the Fund and obtaining any necessary government approval for its income tax exemption and its operation; and (b) maintaining the Fund so it complies with all applicable law and so Employer's contributions to it will be deductible by Employer and not current income to any employee under any applicable federal, state or local tax law.

The Fund will bear all cost of its operations.

E. Mason's Promotional Fund:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by the Union, for each hour worked, shall be contributed to the Bricklayers and Allied Craftworkers Local No. 2 Promotion Fund. Said monies shall be distributed according to Article III, Section 1 A, Schedule A and B. These monies are included in the Training and Education portion fo the Fringe Benefit Receipt Coupon.

15

F. International Masonry Institute:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by the Union, for each hour worked, shall be contributed to the International Masonry Institute. Said monies shall be distributed according to Article III, Section 1 A, Schedule A and B. These monies are included in the Training and Education portion of the Fringe Benefit Receipt Coupon.

G. Capital District Masonry Institute:

The amount specified in Article III, Section 1 A, Schedule A and B, as determined by Eastern Contractors Association, Inc., for each hour worked, shall be distributed according to Article III, Section 1 A, Schedule A and B. These monies are included in the Training and Education portion of the Fringe Benefit Receipt Coupon.

Section 5. Construction Industry Advancement Program

(1) WHEREAS: Recognizing the need for providing a means whereby Employers can facilitate and supplement the financing of their activities, which include, but are not limited to, public relations, public education as applied to the construction industry, Employer expenses incurred in the promotion and stability of relations between labor and management, maintaining facilities and paying costs of arbitration and adjustments of grievances between the Employer and the

Union, collection of Health Funds, Pension Funds, and Apprenticeship Training Programs, also other Employer activity engaged in from time to time, such as promotion of legitimate markets, standardization of contracts and research.  It is mutually agreed by both parties to this Agreement that at no time shall any of these funds be used to support any anti-labor legislation, maintain a lawsuit against any local union of its international body or pay any salaries or expenses to any employee or Employer who is promoting non-union conditions, or subsidize any Employer during a strike or lockout. The only salaries that can be paid are for employees needed to operate this fund.  By no means is it to be used to supplement any other expenses of the Association so that it will release other monies for anti-labor promotions.

If it is found by an arbitrator selected under the procedure as outlined in Article VIII after grievance notice by the Bricklayers and Allied Craftworkers Local Union No. 2, New York that any of the provisions of this Article are being violated or these monies are being used to promote anti-union activities or the promotion of materials or other phases of the industry for a craft not a party to the Industry Fund, the Union shall have the right to terminate the Industry Fund Section of this Agreement in thirty (30) days, upon written notice to the Employers.

A designee from the Union shall receive a copy of

17

the disbursements of the funds quarterly, and the books shall be opened for examination, although the Union acknowledges that it has no voice in the administering of the said fund. Now, therefore, in the interest of providing a means whereby Employers may avail themselves of the combined efforts in securing for themselves and their workers just and honorable dealings with the public they serve.

The Employer shall continue to pay to the Industry Fund of Eastern Contractors Association, Inc., 6 Airline Drive, Albany, New York 12205, a sum to be in an amount equal to one percent (1%) of the basic hourly rate, shown in Article III, Section 1 of the Agreement between Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, New York (building construction), per hour worked, per employee covered by the terms of this Agreement. Said sum to be paid to said fund to be used for abovementioned purposes. Payments to the Fund are included in the Fringe Benefit Receipt Coupon Plan. Monthly report forms are necessary. The Union shall not be responsible for the collection of the Industry Fund.

In the event the laws allow the Union to have representation on any Board of Trustees, committee, group or board that administers such fund, then, in that event, the Union shall be allowed to designate such representatives as will give it equal representation in

the management and administration of such fund.

The Union will provide Eastern Contractors Association, Inc. with a list of the agreements with any Employer who is not a member of Eastern Contractors Association, Inc.

(2) A. The Union shall receive quarterly reports of income and disbursements of the Construction Industry Advancement Program of Eastern New York (CIAP) fund and shall also receive a copy of the yearly audit of the CIAP fund.

B. No services or programs financed by the CIAP fund shall be made available to any person, firm or corporation that is not a member of Eastern Contractors Association, Inc., or is not signatory to the Eastern Contractors Association, Inc. agreements.

Section 6. Delinquencies. Employer failure to make the timely payment by the 15th of the month will be delinquent and subject to Article VIII.

Section 7.   EMPLOYEE ASSESSMENT DEDUCTION

1 A. Employers bound by this Agreement agree to deduct from the wages of employees covered by this Agreement, who have submitted a signed Employee Assessment Deduction Authorization as hereinafter set forth, for Employee Assessment (not including initiation fees, fines or special assessments), the sum equal

to the amount shown in Article III*, per straight-time hour worked, or the appropriate overtime rate worked, to said employee while said Employee Assessment Deduction Authorization is in effect and has not been duly revoked.

**(*This amount is to be deducted from wages after the appropriate taxes have been computed.)**

B. The above monies will be included in the Fringe Benefit Monthly Report Forms, furnished by the Union, and are to be filled out by the Employer and submitted to the Capital Area Bricklayers and Allied Craftworkers Health Benefit Funds office.

2. The Local Union will provide the Employee Assessment Deduction Authorization forms which will state:

# COMBINED BACPAC & IU & LOCAL CHECK-OFF AUTHORIZATION

I hereby authorize any of the various Individual Employers who are signatory to a collective bargaining agreement with any Bricklayers & Allied Craftworkers Local Union. District Council, the International Union, or any other BAC affiliate, and by whom I may be employed during the term of such agreement, or any renewal or extension, or any subsequent agreement, to deduct from my wages and transmit monthly to said Union the sum which the Union has specifies from time to time, as the portion of my union dues to said Union, to the International Union, or any other BAC affiliate, subject to check-off through procedures conforming to applicable law. This authorization shall be irrevocable for a period of one (1) year following the date it was signed or until the current applicable collective bargaining agreement expires, whichever occurs sooner. This authorization shall be automatically renewed from year to year, unless sixty (60) days prior to the termination or annual renewal date I revoke the authorization by written notice to the Union and to the Individual Employer by whom I am employed.

I also hereby authorize the Employer (as described above) to deduct from my wages the sum of two cents ($.02) for each hour paid and to transmit that amount in the manner prescribed by the Union to the Bricklayers & Allied Craftworkers Political Action Committee (BACPAC). This authorization is signed freely and voluntarily and not out of fear of reprisal, and on the understanding that BACPAC is engaged in a joint fund raising effort with the Committee on Political Education of the American Federation of Labor & Congress of Industrial Organizations, that BACPAC will use the money contributed to that effort to make political contributions and expenditures in connection with the federal, state and local elections, and that this voluntary authorization may be revoked at any time by written notice to the Employer and BACPAC of a desire to do so.

- To authorize the deduction of both working dues and BACPAC contribution, please sign and date this form.

21

• To limit the authorization of the deduction of either the working dues or BACPAC contribution, please check the appropriate box, sign and date this form.

**Date** _____,**20**__

**Signature** _____

## Social Security Number _____

Contributions or gifts to the Bricklayers and Allied Craftworkers and/or political action committee (BACPAC) are not tax deductible as charitable contributions for federal income tax purposes. However, they may be tax deductible under other provisions of the Internal Revenue Code.

22

3. The Local Union will provide the Benefit and Defense Fund Authorization forms which will state:

## BENEFIT AND DEFENSE FUND AUTHORIZATION

This is to authorize any of the individual Employers who are covered by a collective bargaining agreement with BAC Local No. 2, Albany, NY, to deduct from my pay the sum of ten cents ($.10) for each hour worked and to transmit that amount to the BAC Local No. 2, Albany, NY Benefit and Defense Fund. This authorization is signed freely and voluntarily and without fear of reprisal, and with the understanding that the Defense and Benefit fund will be used solely for the purpose of the Fund. The above deduction shall be made from my earned pay on each regularly scheduled payday and shall be remitted to the BAC Local No. 2, Albany, NY Work Assessment fund at the same time and in the same manner as the Pension and Welfare Fund Contributions. This authorization shall be automatically renewed from year to year, unless sixty (60) prior to the renewal date I revoke this authorization by written notice to the Union and to the individual Employer by whom I am employed.

**Date** _____
**Social Security Number** _____
**Signature** _____

Copies of this Authorization card will be made available upon request.

## Section 8. Fringe Benefit Receipt Coupon:

A. Each Employer shall make the payments as called for in Article III, Sections 1 A, Schedule A and B for

each actual hour worked, through fringe benefit report as the method of collection. Fringe Benefit Report Forms may be obtained from the Bricklayers and Allied Craftworkers Local No. 2 Albany, NY, Fund Office, 300 Centre Drive, Albany, NY 12203.

B. Each Employer signatory to this Agreement shall, during the term of this Agreement, on or before the 15th day following the end of the month, pay to the Bricklayers and Allied Craftworkers Local No. 2, Albany, NY, Fund Office, the total sum of Employer contributions and payroll deductions as defined in this Agreement. The Monthly Report Form should be accompanied by a check or money order for the amount of the total fringe benefits owed for that month.

C. Effective June 1, 1997, after payment is submitted to the Fund Office, a Fringe Benefit Receipt Coupon will be issued to the employee by the Fund Office. The Employer will be responsible to issue the employee the Fringe Benefit Receipt Coupon.

D. Fringe Benefit Receipt Coupon are purchased by mail.

Apprentices shall receive an amount of fringe benefit receipt coupon equal to the amount of hours worked. Once fringe benefit receipt coupon are mailed by the Fund Office, they become the employee's responsibility.

Cash payment to an employee in lieu of fringe benefit receipt coupon does not fulfill an Employer's obligation to the funds.

Employer failure to make the timely payment by the 15th of the month will be delinquent and subject to Article VIII.

# ARTICLE V
# HOURS

A.

Section 1. The regular working hours under this Agreement shall be eight (8) hours a day between the hours of 8:00 a.m. and 4:30 p.m., except as provided by Section 3 of this Article, and the regular working days are Monday, Tuesday, Wednesday, Thursday, and Friday. Any time worked after regular working hours, Monday through Friday and Saturday, to be paid for at the rate of time and one-half (1 1/2). Double time shall be paid for any hours worked Sunday, and legal holidays. Legal holidays are: New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day. An employee for whom work is scheduled or bid for times other than those enumerated above shall be paid double time.

Section 2. Eight (8) hours shall constitute a work day. If employee of his/her own volition or choice should leave the job before completing eight (8) hours of work, he/she will be paid only for the hours actually

worked. It shall also be the responsibility of each employee to report the actual hours worked.

Section 3.  Flexible starting time permissible between 6:00 a.m. and 8:00 a.m. by mutual consent of Employer and the employee.

Section 4.  In regards to a regular working days hours if an unusual condition presents itself, the matter shall be submitted to the Arbitration Committee for clarification and decision.

B. <u>Tile, Marble, and Terrazzo Finishers.</u>
Section 1. Finishers, at work away from home, shall be guaranteed eight (8) hours pay.

Section 2.  Employees shall have five (5) minutes to clean tools at end of each day.

# ARTICLE VI
# SHIFT WORK AND OCCUPIED PRE-MISES

Section 1. On operations requiring two (2) shifts, the first shift shall work eight (8) hours and receive eight (8) hours pay, and the second shift shall work seven and one-half (7-1/2) hours and receive eight (8)

26

hours pay. It is understood that there is no guarantee, that on a given day, one (1) shift might not vary due to weather, equipment breakdown or changes in operation schedules.

Section 2. A. On three (3) shift operations, the first, or day shift, shall be of eight (8) hours duration; the second shift shall be of seven and one-half (7-1/2) hours duration; and the third shift shall be of seven (7) hours duration. Each shift shall receive eight (8) hours pay.

B. On three-(3) shift operations, the third shift shall be considered as falling on the same day of the week as the first and second shift.

Section 3. On multiple shift work, the work week shall start no earlier than 6:00 a.m. The Employer shall set the starting time. Special cases of starting time may be set by mutual consent. All time worked in excess of the normal shift shall be considered overtime. Saturday, Sunday and Holidays may be included, on which days, however, the appropriate overtime rate shall be paid. There shall be approximately an equal number of employees employed on each shift where practical.

Section 4. No individual employee shall be permitted to work on two (2) shifts except foremen or welders.

Section 5. In the event of an unusual condition, the starting time may be waived by mutual consent of the Employer and the Union. There shall be approximately an equal number of employees employed on each shift where practical.

Section 6. Occupied Premises- A shift may be worked in any occupied building outside of the regular work hours at the eight (8) hours pay for each seven (7) hours worked. On Saturdays, Sundays and holidays, work shall be performed at the appropriate overtime rate. The Employer is to notify the area Field Representative when this work will occur.

# ARTICLE VII
# PAYMENT

Section 1. All envelopes to be plainly marked as to name of Employer, employee, amount of wages, hours worked, and all deductions such as Social Security, withholding tax, Savings Fund, including Health and Pension Fund payments. All employees are to be covered by compensation, unemployment insurance, Social Security, and disability benefits.

Section 2. Wages shall be paid by cash. Members of the Association may pay wages by check. Other

Employers and the Union may agree to pay by check; if so, the following conditions shall be met:

- No more than two (2) days shall be withheld.
- Payment by check, no later than 4:30 p.m. on Thursday.
- Payment by cash, no later than 4:30 p.m. on Friday.

Section 3. Upon notice and demand by the Union, an individual Employer, without established credit, shall be required to secure a bond, or deposit cash to guarantee the payment of all wages and fringe benefits, as provided for under the terms of this Agreement.

Section 4. Each Employer, appearing on the delinquency reports for non-payment of fringe benefits, will be required to promptly post a surety bond or deposit cash to guarantee payment of wages and fringe benefits.

Section 5. The Employer shall pay wages at specified time. If Employer fails to do so, he/she may be liable for waiting time not to exceed two (2) days.

# ARTICLE VIII
# ARBITRATION

Section A.

All disputes which may arise under the terms and conditions growing out of this Agreement shall be settled by arbitration. There is to be no work stoppage of work pending settlement by arbitration. All requests for arbitration shall be: made in writing; and include a statement of alleged violations and specific provisions of the contract allegedly violated and detail all efforts to resolve the dispute; and be served upon the Employer or Union with a copy to the Association. Arbitration Board to consist of three (3) members selected by the Party of the First Part and three (3) members selected by the Party of the Second Part. Since the deliberation of this Arbitration Board will involve the peculiar facts, processes and customs of the Tile, Marble, and Terrazzo business, such members of the Party of the Second Part shall be Tile, Marble, and Terrazzo members of the Bricklayers and Allied Craftworkers Local No. 2 covered by this Agreement. The Party of the First Part shall have the right to have an equal amount of members as the Party of the Second Part. Business Agents of each local shall have the privilege of serving on the committee. The decision of this Board shall be final and binding on both Parties.

Section B.

In the event that the Arbitration Board cannot agree upon the question in controversy, each Party shall designate an arbitrator; and the two (2) shall choose a third; and the third shall constitute an Arbitration Board. Both Parties shall supply each arbitrator with all data and information bearing on the controversy, and the cost of such arbitration shall be borne equally by both Parties of this Agreement. The award of such Arbitration Board shall be binding and final on both Parties who shall have no recourse to any other tribunal or procedure. Pending the final award of such Board, it is hereby agreed that there shall be no strikes, lockouts or stoppage of work, individually or collectively, on any project involved in the controversy.

Section C.

Delinquencies. In the event the Employer is delinquent in its payment of contributions due to the Local 2 BAC Benefit Funds for a period of seven (7) days the Union shall have the rights, (upon two (2) days notice to the prime Contractor and the Employer and the Association to (1) terminate this Agreement and/or (2) withdraw the services of it's members from the Employer, and/or (3) strike or engage in a boycott with respect to such delinquent Employer.

If any economic action is taken by the Union, the Employers employees shall be paid wages and fringe

benefits for all time lost from work due to their strike or withdrawal of services.

# ARTICLE IX
# BONDING

Section 1. Employer without established credit shall post a bond of ten thousand dollars ($10,000.00).

Section 2. Employers covered under this Agreement found delinquent in fringe benefit payments, or having been found delinquent previously, shall be required to deposit a ten thousand dollars ($10,000.00) bond with the Union to guarantee the payment of all wages and fringe benefits as provided by the terms of this Agreement, after review and decision made by the Joint Arbitration Board. The Employer covered under the terms of this Agreement will be required to post a ten thousand dollars ($10,000.00) bond with the Union.

# ARTICLE X
# NATIONAL AGREEMENT

It is understood and agreed by both Parties that the currently existing national agreement by and between the Tile Contractors Association of America and Bricklayers and Allied Craftworkers of America; shall form part of this Agreement. The Union shall provide copies of the above agreements upon request.

# ARTICLE XI
# FOREMEN

A. <u>Tile, Marble, and Terrazzo Workers.</u>

Section 1. All foremen shall be mechanics in their respective trades with at least six (6) years experience. When five (5) mechanics are employed and up to nine (9) mechanics, the foreman shall receive at least one dollar ($1.00) per hour more than the Journeyman's wage. When ten (10) or more mechanics are employed, he/she shall receive at least two dollars ($2.00) per hour more than the Journeyman's wage; and he/she shall not use the tools of the trade. When two (2) or more mechanics are employed, one (1) of them shall be foreman.

B. <u>Tile, Marble, and Terrazzo Finishers.</u>

Section 1. All foremen shall be qualified and experienced in the trade.

33

Section 2. When three (3) or more finishers are employed on a project, one (1) shall be appointed foreman.

Section 3. When ten (10) or more finishers are employed on a project, the foreman shall receive at least fifty cents ($.50) per hour above the Finishers' scale.

Section 4. There shall be no restriction as to the appointment by the Contractor of a foreman. The foreman must be competent in the particular line of work to be accomplished.

Section 5. The Party of the First Part may have the privilege to pay the appointed foreman, regardless of the number of members employed, additional compensation not to exceed twenty-five cents ($.25) per hour above the finishers' rate, when the circumstances in his/her judgment requires it.

Section 6. The finisher foreman shall not be restricted from performing regular duties, and he/she must consult with worker foreman so that proper coordination and efficiency are maintained on all jobs.

Section 7. The finisher foreman shall work under the direction of the superintendent and worker foreman at all times.

# ARTICLE XII
# ASSOCIATION SECURITY

Section 1.   The Union recognizes Eastern Contractors Association, Inc., as the exclusive bargaining representative of all members.

Section 2.   The Association represents that it is duly authorized by its designating members hiring Bricklayers to enter into this collective bargaining Agreement, that in so doing they are authorized to bind such designating members to the terms and condition of membership in said Association, that such designating members shall continue to be bound by terms or, shall upon admission to the said Association, after the date of execution of this Agreement, agree to be bound from that date forward by all terms and conditions of this Agreement.

Section 3.   There shall be one (1) bargaining unit for all Employers bound by this Agreement for the geographical and trade jurisdictions covered herein including any individual Employers who are not designating members of Eastern Contractors Association, Inc. but who sign this Agreement or agree to be bound to it.

The management party hereto shall be considered the bargaining unit.

Section 4.  No modification, variation, or waiver of any terms or provision herein shall be valid unless agreed upon in writing by both the Association and the Union.  With the exception of project labor agreements or project agreements, where the Union will make every effort to include the Association in the negotiation of the project labor agreement or project agreements.  The Union will supply the Association with a copy of any project labor agreement, it negotiates to which the Association is not a party.

Section 5.  This Agreement will be available for organizing purposes on a single project basis once per newly organized Employer within one month of organization.  The Union will furnish ECA with a list of all signatory Employers as of the date of this Agreement.  The Union will furnish ECA with a copy of all Project Labor Agreements, owner understandings, specific to the jurisdiction of this Agreement, International Agreements, etc. within one month.

# ARTICLE XIII
# PROTECTION

The Union shall not afford to any other Employer with whom it signs a contract, terms or

conditions more favorable than those incorporated in this contract.

# ARTICLE XIV
# SEVERABILITY

If any provision of this Agreement shall violate any applicable stature or is held invalid by any court or government agency having jurisdiction, such invalidity shall not affect the validity of the remainder of this Agreement and such provision or Article shall be void.

# ARTICLE XV
# JURISDICTION

A. <u>Tile, Marble, and Terrazzo Worker.</u>

Section 1. All surfaces to receive tile from metal lath, brick and/or block walls starting with a scratch coat and including mortar bed, setting bed and/or float coat shall be the work of the Tile Worker, thus enabling him/her to control with accuracy the dimensions of his/her finished product. This shall apply to the cold wall and wet wall methods. Where patching of existing gypsum plaster surfaces is required, it shall remain the work of the plasterer.

Section 2. The mechanical grouting of all ceramic walls and floors and the honing, buffing, polishing and patching of all marble products, either by hand or by hand held power equipment shall be the work of the I.U. of B.A.C. employees, signatory to this Agreement. Also, all chemical process work including desotex, magnesite, polyester terrazzo, all epoxy and seamless work shall be performed by the employee referred to in this Agreement. This will include the mixing, dressing, sealing, and use of all machinery, tools, appliances or methods which may be practical in the performance of their duties.

Section 3. All interlocking paving brick, brick pavers and hex brick or any other shape of brick regardless, set in a sand bed, bituminous bed or any other type of underlayment, shall be the work of the Tile and Terrazzo Worker.

Section 4. This work shall be assigned by virtue of a Jurisdictional Agreement between the crafts involved and, being part of this Agreement, such arrangement is binding on the Parties signatory to this Agreement.

Section 5. <u>Geographical Area</u>. Bricklayers and Allied Craftworkers Local Union No. 2, New York, Tile, Marble and Terrazzo Workers geographical jurisdiction of this local shall be as defined in ARTICLE I of the

Agreement between Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, New York (building construction). That portion of Schoharie County west of the southeast corner of Schenectady County, running southwest of the south boundary line of the Village of Middleburg, then northwest to the Otsego County line. All of the Counties of: Albany, Clinton, Columbia, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Warren, and Washington.

B. <u>Tile, Marble, and Terrazzo Finishers.</u>
WORKING CONDITIONS
Section 1. The Employer on any job shall determine the number of finishers to be employed, and the established customs of each trade as outlined below shall be performed and maintained by the Finishers. These are in general but not limited to the following:

Section 2. Finishers shall do all the cleaning and grouting, mixing, handling and distributing of all materials used by a Marble Mason in connection with marble, slate, precast terrazzo, etc.

Section 3. Finishers shall do all the mixing, grouting, cleaning, handling and distribution of materials used by a Tile Worker in connection with ceramic tile, quarry tile, pavers, etc.

Section 4. Finishers shall do all the mixing of sand and cement, terrazzo chips, including all compositions, and handle and distribute all materials used by the Terrazzo Worker.

Section 5. Finishers shall do all the grinding, polishing, grouting, cleaning and waxing on all terrazzo (and/or composition) put down by the Terrazzo Worker.

Section 6. The Parties hereto shall use their best efforts in the industry's and public's interest to increase production and reduce costs by maintaining more hour output and to use all machinery, tools, appliances or methods which may be practical.

Section 7. No Employer, nor anyone having financial interest in a company, shall perform the duties of a Finisher.

Section 8. All out-of-town contractors permitted to bring one (1) key man only.

Section 9. No Finisher shall be required to report to the shop before 7:30 a.m. or after 4:30 p.m. to receive orders.

Section 10. JURISDICTIONAL AREA
The jurisdictional area of Tile, Marble and Terrazzo Finishers of the Bricklayers and Allied Craftworkers

Local No. 2, New York as conceded to their charter by the International Association, is as follows:

New York State Counties: Albany, Clinton, Columbia, Essex, Franklin, Fulton, Greene, Hamilton, Montgomery, Rensselaer, Schenectady, Schoharie, Saratoga, Warren. and Washington,

Also in New York State:

The eastern part of Montgomery County, east of Canajoharie, including the township of Fonda.

The eastern part of Fulton County, including the township of Gloversville to north county line.

The southeast part of Otsego County, southeast of Cooperstown, but including the township of Maryland.

The eastern part of Delaware County, east of Cooks Falls, but including the townships of Delhi, Meredith and Davenport Center.

Massachusetts County: Berkshire.


# ARTICLE XVI
# INTERPRETATION


The Joint Committee reserves the right to make final interpretation of any of the Articles of this Agreement, subject to the rules for arbitration set forth in Article VIII.

# ARTICLE XVII
## STEWARDS

A. <u>Tile, Marble, and Terrazzo Workers.</u>

Section 1. Stewards must be appointed in all shops by the Field Representative or President of the Union, who shall notify the Employer or his/her representative of such appointment. The steward shall be a member of the Party of the Second Part. Before a shop steward is discharged, the Field Representative/Local President has to be notified. If the Field Representative/Local President and Employer cannot agree on the discharge of the steward, the question shall be referred to the Joint Arbitration Committee.

Section 2. The stewards shall represent the Union's interest and work with the tools.

Section 3. Pending a hearing and decision by the Joint Arbitration Committee, if the shop steward is wrongfully discharged, no pay shall be lost by him/her. The first employee on the job is responsible for the pension and health record reports.

B. <u>Tile, Marble, and Terrazzo Finishers.</u>

Section 1. It is recognized that the Union has the right to appoint the job steward. The Field Representative/Local President must inform the Employer, or his/

42

her representative, of such appointment. stewards shall be allowed reasonable time to perform their duties on the job.

# ARTICLE XVIII
# TOOLS

A. <u>Tile, Marble, Terrazzo Workers.</u>
Section 1.  Light leads and notched trowels to be furnished by Employer.  Chisels, cutting wheels to be sharpened by the Employer.  Employer to be responsible for sharpening only chisels and wheels dulled by work on his/her project.  Employer to supply tools for cutting material larger than 8" by 8".

Section 2.  Employer to furnish all power tools. Employee shall take reasonable care to maintain and return same.

Section 3.  When working with epoxy, Employer shall furnish necessary protective items of clothing.

B. <u>Tile, Marble, and Terrazzo Finishers</u>
Section 1. Employer shall provide protective clothing in periods of inclement weather or due to conditions on the job.

Section 2.  Finisher must have the proper tools to perform his/her job (such as, trowel, hammer, chisel, rubber gloves, etc.).

C.

Section 1.  When working with epoxy, the Employer shall furnish necessary protective items of clothing.

Section 2.  Employer shall provide rain gear.  Employee shall take adequate care of same and return same to Employer inproper condition.

Section 3.  PROTECTION.

Any Employer of six (6) or more employees is required to supply suitable arrangements under lock and key for storing employee's tools against fire and theft from force of entry.  Employee is to use reasonable precautions when storing his/her tools and equipment outside of regular working hours.  Employer is to cover such loss by proper methods.

# ARTICLE XIX
# PRESERVATION OF WORK

Section 1. (a) It is contrary to the sound business principles and spirit of this Agreement for Employers to work with the tools, thus depriving workmen of

employment and in no case shall more than one (1) member of a firm be permitted to work with the tools.

(b) Only one (1) member of the firm (i.e. partner, officer, stockholder or owner) will be allowed to work with the tools provided, however, that when there is work for only one (1) mechanic, no member of the firm will be allowed to work with the tools.

(c) In the event it is claimed that this clause is being violated by any Employer or the Union, any party to the Agreement or the Association may file a grievance under the Arbitration provisions of this Agreement.

(d) A "Contractor" or "Employer" within the meaning of this Article includes any individual or the spouse of any individual who - no matter what the form of the enterprise may be - is alone or jointly a real party in interest in the contracting establishment or, as legal or undisclosed or disclosed beneficial owner, or corporate officer or director or otherwise directly or indirectly manages, directs, or controls the business.

(e) Where the one (1) member of the firm to work with tools is designated by such firm, he/she shall be identified by name in advance to both Parties.

(f) No sole proprietor, partner, stockholder or officer of any Employer shall perform any work when it comes within the jurisdiction of Union 2, unless at least one (1) journeyperson is working at each shop.

(g) An owner, proprietor, partner, stockholder or officer of any Employer may perform work with the tools, only on the following types of structures: rehabilitation residential projects/fast food service; multiple housing, and any type of high rise rehabilitation construction.

(h) The provisions included in this Article dealing with "Preservation of Work" shall be effective commencing May 1, 1971.

Section 2.

(1) Effective May 1, 1970, an Employer working with tools shall be restricted against overtime work in such capacity. The privilege of such overtime work shall be reserved for Journeymen.

(2) Any employee who goes into the contracting business shall not work for any other Contractor, nor shall any Contractor employ any such person. Also, if the individual decides to discontinue contracting, he/she is ineligible to work as a Journeyman for another Contractor for a period of one (1) year from the time he/she went into the contracting business.

(a) In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Employer shall perform

any work of the type covered by this Agreement, under its own name or under the name of another, or as a corporation, company partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any substantial degree of ownership, management or control, the economic terms and conditions of this Agreement shall be applicable to all such work.

(b) As a remedy for violations of this Section, the Arbitration Board or the Arbitrator shall, at the request of the Union, require an Employer to pay the equivalent of wages and fringe benefits lost by employees covered by this Agreement, as a result of such violations to each such employee and to the appropriate fringe benefit trusts respectively. Provision of this remedy herein does not make such remedy the exclusive remedy available to the Union for violations of this section; nor does it make the same or other remedies unavailable to the Union for violations of this section on other articles of this Agreement.

# ARTICLE XX
# COFFEE BREAK

A. <u>Tile, Marble, and Terrazzo Workers.</u> A ten (10) minute coffee break will be allowed in the morning.  A ten (10) minute break in the afternoon.
Employees shall remain at place of their work.

B. <u>Tile, Marble, and Terrazzo Finishers.</u> A ten (10) minute coffee break in the morning and in the afternoon is permitted, when coffee is available in the immediate vicinity of the job site.  Such privilege to continue unless abused by employee.

# ARTICLE XXI
# SUBCONTRACTING

A. <u>Tile, Marble, and Terrazzo Workers.</u>
<u>Section A</u>
(1)  The Contractor subletting any portion of a job or work on a job site shall as a condition preceding such subletting, request the subcontractor to meet with the representatives of the Union for the purpose of complying with the provisions of the Agreement for such work.

(2)  In addition, the Contractor shall provide in any

48

subcontract that the subcontractor shall conform to the terms of this Agreement insofar as wages, hours and working conditions are concerned.

(3)  If it is found that the subcontractor is not complying with Paragraph (1) above, the Union shall give the Contractor forty (40) hours notice in writing before any action is taken.

(4)  Responsibility of the Contractor for loss of wages and benefits shall be limited to the amount of monies due to the subcontractor by the contractor as of the date of written notice.

## Section B

The Employer agrees that this Agreement will bind and be for the benefit of any corporation or company which may exist or be formed in which the Employer or its principals may have a substantial financial or proprietary interest.  If such company is engaged in construction work coming within the work jurisdiction of the Unions party hereto and any other work normally covered by this Agreement.

## Section C

The General Contractor, Prime Contractor, Builder, or Subcontractor agrees that they will not subcontract any work covered by this Agreement to any of their

employees in order to circumvent the payment of wages, fringe benefits and working conditions, provided for herein.

<u>Section D</u>
The Employer agrees that when subcontracting work covered by this Agreement, which is to be performed within the geographical area covered by this Agreement and at the site of construction, alterations, or repair of a building, structure, road or other work, he/she will sub-contract such work only to an Employer or person who will agree to comply with all the terms and conditions of this Agreement.

## ARTICLE XXII
## NOTICE

A. <u>Tile, Marble, and Terrazzo Workers.</u> The Field Representative/Local President of each respective Union shall be notified by the Contractor prior to com-mencement of work.

## ARTICLE XXIII
## ORGANIZING

A. <u>Tile, Marble, and Terrazzo Workers</u>. Newly Or-ganized Workers working under the jurisdiction of this

Agreement will receive seventy percent (70%) of the mechanics wage, plus all fringe benefits agreed upon, where allowable by law and for no more than five hundred (500) working hours. Then the Newly Organized Workers must register as a Worker apprentice with due consideration for time served. Newly Organized Workers who become apprentices shall serve an apprenticeship of at least two thousand (2000) working hours. The Employer shall notify the Union of the hiring of any Newly Organized Workers.

B. <u>Tile, Marble, and Terrazzo Finishers</u>. Newly Organized Finishers working under the jurisdiction of this Agreement will receive seventy percent (70%) of the Finishers wage, plus all fringe benefits agreed upon, where allowable by law and for no more than five hundred (500) working hours. Then the Newly Organized Finishers must register as a Finisher apprentice with due consideration for time served. Newly Organized Finishers who become apprentices shall serve an apprenticeship of at least two thousand (2000) working hours. The Employer shall notify the Union of the hiring of any Newly Organized Finishers.

C. The parties will meet and draft language on training and recruitment of new Tile Workers and Finishers. The selection and training shall be a joint labor-management function.

# ARTICLE XXIV
# MOONLIGHTING AND LUMPING

Any member working under the jurisdiction of this Agreement found moonlighting or lumping will be prosecuted under the International Union of Bricklayers and Allied Craftworkers Constitution and Codes.

# ARTICLE XXV
# SAFETY TRAINING

1. It is agreed that the Union will work with the Employer and ECA to properly train and certify employees to meet all skill and safety requirements of the Association's and Employer's safety programs, Owner safety programs, Hazardous Communications program, State and local safety regulations and that of OSHA pertaining to the scope of work such employee is assigned to perform. The Union and the Employer agree that the skill and safety requirements are necessary to maintain productivity and increase quality and guard against undue injury or death to themselves and others. The Employer, Association and Owner shall provide their respective safety programs upon the request of the Union.

The employee shall provide proof of training and certification supplied by ECA, the Union, and

the Employer upon request of the Employer and/
or Local No. 2.

The Union will encourage and educate all insured members to have yearly physicals.

2.   The Union shall present to the Trustees of the Joint Apprentice Training Fund the request to:

A. One time fit test all future apprentices within the first year of employment.

B.  Conduct Blue Print Reading.

C. Conduct 8-Hour Scaffold Erector Fall Protection Training.

D.  Substance Abuse Awareness Training.

3.   The Union, ECA, and the Employers will provide the following minimum training and certification contingent upon ECA securing the grant from the NYS Department of Labor Occupational Safety and Health Hazard Abatement Board.

A. OSHA 500 and 501 10-Hour Construction Safety Outreach, 4-Hour MSDS Certification Training, 4-Hour Scaffold User/Fall Protection Training.

B.  4-Hour Confined Space.

C.  6-Hour Ergonomic.

D.  8-Hour Basic First Aid/CPR Training.

E.  Substance Abuse Awareness Training.

F.  Silica Training for Construction.

4. All Foremen shall be provided:

A. 40-Hour Scaffold Workshop.

B. Foreman Course and Supervisory Training Program (STP).

# ARTICLE XXVI
# APPRENTICE WAGES & WORKING CONDITIONS

Section 1. <u>Tile, Marble, and Terrazzo Workers.</u> No Employer shall have the privilege of having a worker apprentice until he/she has been a recognized Contractor of Tile, Marble, Terrazzo Industry for one (1) year. The term of Apprentices shall be three (3) years.

Section 2. When finisher becomes a worker apprentice, there will be a mutual agreement between Employer and Union regarding starting wages.

Section 3.

(1) <u>Tile, Marble, and Terrazzo Workers</u>.  The rates for apprentices are:

| TERM - Working Hours of Covered Employment | WAGES – Percent of Journeyperson's Rate | FRINGE BENEFITS |
|---|---|---|
| 0-500 | 60% | 0 – 500 Working Hours – No Local Pension and all other benefits in full. |
| 501-1500 | 80% | Full Benefits |
| 1501 - 2000 | 90% | Full Benefits |

(2) Tile, Marble, and Terrazzo Finishers. The rates for apprentices are:

| TERM – Working Hours of Covered Employment | WAGES – Percent of Journeyperson's Rate | FRINGE BENEFITS |
|---|---|---|
| 0-500 | 70% | 0 – 500 Working Hours – No Local Pension and all other benefits in full. |
| 501-1500 | 80% | Full Benefits |
| 1501 - 2000 | 90% | Full Benefits |

Section 4. Tile, Marble, and Terrazzo Workers. Worker apprentices shall receive an amount of receipt coupons equal to the amount of hours worked in wages. No worker apprentice is permitted to work alone unless the Employer feels that the worker apprentice is capable.

Section 5. Tile, Marble, and Terrazzo Finishers. In case of a layoff on any job by a Contractor, the appren-

tice finishers will be laid off before any finishers are laid off provided the finisher is qualified to perform the work.

Section 6.   Joint Apprenticeship Committee composed of equal numbers of Employers, as chosen by the Association, and the Union Representatives.   All apprentices shall be governed by the Joint Apprenticeship Committee.  Any questions that may arise must be taken before the Joint Apprenticeship Committee for a decision.  The Union will open its membership for apprentices provided that the Employers Committee can show the need for additional masons and provided that the Employer will provide the employment needed for the apprentices as the Joint Apprenticeship Committee trains and produces the apprentices.

The Employer cannot lay off a mason apprentice unless he/she has given the Joint Apprenticeship Committee or Union Business Agent two (2) days' notice. If Employer does not provide said notice, he/she is subject to fine or reprisal by the Joint Apprenticeship Committee.  The apprentice cannot leave the employ of the Employer unless he/she has provided the Joint Apprenticeship Committee with the same two (2) days' notice. All apprentices must be registered with the Joint Apprenticeship Committee and the New York State Department of Labor.

# ARTICLE XXVII
# SHOW - UP TIME

In the event employee is required to be available for work but cannot due to the fault of the Employer, show-up time of one (1) hour shall prevail.

# ARTICLE XXVIII
# TRAVELING CONTRACTORS

A. <u>Tile, Marble, and Terrazzo Finishers.</u>
When the Employer has any work specified in Article XVI of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the Union, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of the Article but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed, plus all contributions specified in the job site local Agreement. The Employer shall in all other matters be governed by the

58

provisions established in the job site local Agreement. If employees are sent to work on a project in an area in Article XVI of this Agreement, the full terms and conditions of this Agreement shall apply.

# ARTICLE XXIX
# UNION SECURITY

Section 1. A. <u>All Employers.</u>

(1). <u>Tile Workers.</u> It is understood and agreed by and between the Parties hereto that, as a condition of continued employment, all persons who are hereafter employed in the unit which is the subject of this Agreement shall make application to the Union after seven (7) days from the date of their employment, after demonstrating qualifications as craftworkers of the trade that the continued employment by the Employer in said unit of persons who are already members of the Union shall be conditioned upon those persons continuing their payment of the periodic dues of the Union.

(2). <u>Tile Finishers</u>. The failure of any person to make application to the Union within said period of time shall obligate the Employer, upon notice from the Union to the such effect and to the further effect that Union membership was available to such person on the same terms and conditions generally available to other members, to forthwith discharge such person.

B. <u>Non-Association Employers.</u> - Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein. The Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employee's exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

C. <u>Eastern Contractors Association, Inc.</u> - All firms which are members of Eastern Contractors Association, Inc. and are parties to the Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2, Tile Workers and Tile Finishers Agreement, or which have designated to Eastern Contractors Association, Inc. bargaining rights for the Eastern Contractors Association, Inc. and Bricklayers and Allied Craftworkers Local Union No. 2 Tile Workers and Tile Finishers Agreement will be covered by the Eastern Contractors Association, Inc.'s recognition policy for the Bricklayers and Allied Craftworkers Local Union No. 2.

# ARTICLE XXX
# NON-DISCRIMINATION

Section 1. The Parties mutually agree that they will comply and cooperate with all federal, state, and relevant local laws and regulations dealing with non-discrimination in employment and hiring.

Section 2. It is recognized that there are specific subcontract requirements for D/M/WBE participation in most public work contracts and that certain exceptions to the Subcontracting Article (XXI) may be required for the Employer to comply with these requirements. Every effort will be made by the Employer to arrange a pre-job meeting with these subcontractors and the Union. It is understood that in no way shall the enforcement of this clause allow other trades to perform the work of this Union.

# ARTICLE XXXI
# LABOR - MANAGEMENT

The parties agree to continue to mutually support in the Upstate New York Trowel Trades Labor-Management Committee and other ongoing labor-management activities.

# ARTICLE XXXII
# DRUG TESTING

1. If as a condition of working on a project, drug testing is required of the employee, Eastern Contractors Association, Inc. and the Bricklayers and Allied Craftworkers Local Union No. 2 shall meet and shall discuss a project agreement for Drug Testing.

2. Eastern Contractors Association, Inc. and the Bricklayers and Allied Craftworkers Local Union No. 2 shall have a special committee to develop a model program on drug testing during the life of this Agreement.

3. A. Bricklayers and Allied Craftsworkers Local No. 2 has a Member Assistance Program (MAP) available to all members and their families. 1-800-327-1984.

B. This Agreement does not mandate drug testing.

C. The parties are committed to the maintenance of an alcohol and drug free workplace under the provisions of this Agreement. All employees shall comply with the requirements of all Employer safety/substance abuse policies, Owner safety/substance abuse policies, project safety/substance abuse policies, and all Federal, State, and Local alcohol and drug testing requirements.

D. Policies referenced in Section C will be available on request of the Union.

E.  If testing is required on a project, then the Employer shall pay the cost of the test.

# ARTICLE XXXIII
# ASSOCIATION AND UNION SIGNATURE PAGE

**IN WITNESS WHEREOF,** we have hereunto set our hands and attached the official seals of our respective organizations on this 31st Day of May 2000.

**TILE, MARBLE AND TERRAZZO FINISHERS AND WORKERS OF THE BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL NO. 2, NEW YORK**

**EASTERN CONTRACTORS ASSOCIATION, INC.**

Al Catalano
John Buck
Robert Leitch
James Rafferty

Victor Mion, Jr.
Anthony Marcio
John Pludrzynski

# ADDENDUM 1

# ECA/BASIC TRADES WORKERS' COMPENSATION PROGRAM

The parties have adopted as apart of this Agreement the ECA/Basic Trades Workers' Compensation Program including the Workers' Compensation Alternative Disputes Resolution Addendum.

## WORKERS' COMPENSATION ALTERNATIVE DISPUTES RESOLUTION ADDENDUM

## AGREEMENT PREAMBLE

This Agreement is made and entered into the 28th day of February, 1996 by and between Eastern Contractors Association, Inc. (hereinafter referred to as the Association) and International Union of Bricklayers and Allied Craftworkers (Local Nos. 2, 8, 11, and 45), United Brotherhood of Carpenters and Joiners of America (Local No. 370), International Association of Bridge, Structural and Ornamental Iron Workers (Local No. 12), Laborers' International Union of North America (Local Nos. 157 and 190), International Union of Operating Engineers (Local No. 106) and International Brotherhood of Teamsters (Local No. 294) and other Unions electing to participate (hereinafter referred

to as the Unions) and is an Addendum to the Building; Heavy & Highway (Bricklayers and Allied Craftworkers); and Tile, Marble and Terrazzo Finishers and Workers (Bricklayers and Allied Craftworkers) collective bargaining agreements and successor collective bargaining agreements between the Association and the Unions.

## ARTICLE I
## PURPOSE

It is the intent of this Agreement to provide employees who incur injuries or suffer occupational diseases as defined under the New York Workers' Compensation Law (hereinafter referred to as the Law) with improved access to high quality medical care, and to reduce the number and severity of disputes and provide an efficient and effective method for dealing with disputes resulting from such injuries and diseases by utilizing the provisions of subdivision 2-C of Section 25 of the Law to establish a system of medical care delivery and dispute prevention and resolution which will be used by all employees covered by this Agreement.

## ARTICLE II
## SCOPE OF AGREEMENT

a) This Agreement shall apply only to an Employer that is signatory to at least one (1) of the collective bargaining agreements between the Association and the

Unions listed above in Article I and that chooses to participate in this Agreement and to its employees who are covered under such agreements. The Employer shall serve written notification on the Association, the Union representing the Employer's employees and on Ulico Casualty Company (hereinafter referred to as the Prime Carrier) of the Employer's application to participate in this Agreement. Initial and continuing participation shall be subject to the approval of the Joint Labor-Management Oversight Committee established in Article V and of the Prime Carrier.   An Employer insured with a workers' compensation carrier other than the Prime Carrier or a self-insured Employer must demonstrate that it will be able to provide claims management, medical management and program representative services consistent with this Agreement and satisfactory to the Oversight Committee and the Prime Carrier and must agree to pay the applicable costs for dispute resolution services, medical network operation and other related program expenses.

In accordance with Rule 314.2(c), any participating Employers who are insured by a carrier other than Ulico, Inc. (the "Prime Carrier") shall provide the WCB with a statement signed by their insurance carrier expressing the carriers' consent to the workers' compensation claims provisions contained in the Agreement. Participating Employers who do not contract with an insurance carrier shall submit proof of self-insurance

on WCB form SI - 12.

The Prime Carrier or other participating carrier or self-insured Employer, as appropriate, shall provide prompt written notification of the Employers who elect to utilize the provisions of the alternative disputes resolution Agreement and an estimate of the numbers of employees thereby bound to the alternative dispute resolution process to the WCB.

b) This Agreement shall apply only to workers' compensation claims for compensable injuries and occupational diseases, as defined by the Law, sustained by employees of the Employer covered by this Agreement, during their employment by the Employer, on or after the effective date of this Agreement, irrespective of the date of the claim. This Agreement shall not be construed to modify the provisions of the Labor law nor shall it in any way modify claimant's rights to commence action based upon negligence, violations of Labor Law, violations of OSHA or otherwise against any third party.

c) This Agreement shall remain in effect for not less than one (1) year from the date of its execution. Thereafter, it shall continue and remain in force during the full term of the collective bargaining agreements to which it is an Addendum, subject to the termination notification requirements set forth in those agreements. Upon termination of coverage of this Agreement with respect to an individual employee or to all employees

of an Employer, unless this Agreement or the underly-
ing collective bargaining agreements are being renego-
tiated, the Employer and the employee(s) shall become
fully subject to the provisions of the Law to the same
extent as they were prior to the implementation of this
Agreement, provided, however, that any claim arising
from an accident or illness sustained on or before the
date of termination of coverage of this Agreement shall
continue to be covered by the terms of this Agreement
for a period of two (2) years and further provided that
when a claim has been adjudicated under this Agree-
ment, the Employer and the claimant shall be estopped
from raising identical issues before the Workers' Com-
pensation Board.  On termination of the Agreement,
copies of all records related to claims adjudicated un-
der the Agreement shall be transferred by the respon-
sible carrier to the Workers' Compensation Board. This
Agreement shall not remain in effect beyond Decem-
ber 31, 2005 unless authorized by Law.

d) This Agreement represents the complete under-
standing of the parties with regard to the subject matter
dealt with herein.

e) In any instance of conflict, the provisions of this
Agreement shall take precedence over provisions of the
Law, so far as permitted by the provisions of subdivi-
sion 2-C of Section 25 of the Law.

f) This Agreement shall not be construed to modify
the provisions of the Law related to notice, claim fil-

ing, first report of injury, notification of controversy, notification of the cessation of benefits, payment of benefits, payment of attorney or licensed representative fees or any other provision of the Law or its supporting case law, except as specifically set forth in this Agreement.

g) Notwithstanding any other provision of this Agreement, it is hereby agreed that for other than office or clerical employees, that no employee not covered under a collective bargaining agreement with at least one (1) of the signatory Unions shall be covered under this alternative dispute resolution agreement, nor shall be permitted coverage under the alternative dispute resolution for resolution of claims. Any party that fails to file for arbitration within thirty (30) calendar days after the completion of the mediation process as provided above shall forfeit its right to arbitrate under the terms of this Agreement. This provision shall not be in effect unless authorized by Law.

# ARTICLE III
# AUTHORIZED MEDICAL PROVIDERS

a) All medical and hospital services required by employees subject to this Agreement as the result of compensable injury or occupational disease, shall be furnished by health care providers and facilities

negotiated by the parties to this Agreement, hereinafter referred to as authorized providers. A list of the authorized providers shall be made available to all employees subject to this Agreement. The list can be changed any time by mutual agreement of the parties to this Agreement. All authorized providers, other than health care facilities, shall be board certified in their respective specialties. The parties to this Agreement may agree on a case-by-case basis to permit a board eligible health care provider to act as an authorized provider as permitted by WCB.

b) In case of emergency when no authorized provider is available, the employee may seek treatment from a health care provider or facility not otherwise authorized by this Agreement, to provide treatment during the emergency. Responsibility for treatment shall be transferred to an authorized provider as soon as possible, consistent with sound medical practices.

c) After selecting an authorized provider to furnish treatment, an employee may change once to another authorized provider. When referred by the authorized provider to another provider in a particular specialty, the employee may also change once to another authorized provider in such specialty. Additional changes will be made only with the agreement of the Employer.

d) Neither the Association, the Employer nor the Union(s) shall be responsible for the cost of medical services furnished by a health care professional or

facility not authorized pursuant to this Agreement.

e) The list of authorized providers shall contain sufficient numbers of providers for each of the specialties which the parties to this Agreement believe are required to respond to the needs of employees subject to this Agreement. In the event that an authorized provider furnishing treatment to an employee determines that consultation or treatment is necessary from a specialty for which no authorized provider has been selected through this Agreement, or in the event that distance makes it impractical for treatment from the authorized provider, the authorized provider shall select the additional specialist or the additional provider who offers treatment at a practical distance for the employee.

f) All prescription medicines required by employees subject to this Agreement as a result of injury or occupational disease shall be furnished by the Employer through a prescription medicine provider agreed to by the parties to this Agreement. This prescription medicine may be provided by the prescription medicine provider.

g) Either the Employer or the employee may request a second opinion from an authorized provider regarding diagnosis, treatment, evaluation or related issue. A third opinion may be requested through the mediator or arbitrator if the first two do not agree.

h) Both the Employer and the employee shall be bound by the opinions and recommendations of the authorized providers selected in accordance with this Agreement.   In the event of disagreement with an authorized provider's findings or opinions, the sole recourse shall be to obtain a second opinion from another authorized provider and to present the opinions through the dispute prevention and resolution procedures established in this Agreement.

I) The parties to this Agreement agree that it is in their mutual best interest to establish a schedule limiting the fees which the authorized providers may charge for providing documents and narrative reports, and will work with the authorized providers to establish such a schedule.

j) If the underlying compensability of a claim is being controverted by the Employer, the employee is not bound by this Article pending the resolution of the controversy.   Any issue of compensability shall be resolved under Article IV of this Agreement.   If the claim is found to be compensable, the Employer will be responsible for payment of the health care rendered to the employee, at the applicable fee schedule.

# ARTICLE IV
# DISPUTE PREVENTION AND RESOLUTION

a) The dispute prevention and resolution program will consist of three components:

Program Representative

Mediation

Arbitration

b) This program shall be used in place of and to the exclusion of the New York State Workers' Compensation Board (WCB) conciliation, he/shearing and review processes. Any request made to the WCB for conciliation, he/shearing or review of any claim subject to this Agreement will immediately be referred by the WCB to the program established by this Agreement.

c) The Program Representative, mediator(s) and the arbitrator(s) will be selected through negotiation among the parties to this Agreement and will be paid by the Employer, except that the costs for those employers insured by the Prime Carrier will be paid by the Prime Carrier. All individuals considered for mediator or arbitrator shall disclose to the Joint Labor-Management Oversight Committee any current or previous employment or affiliation by the Prime Carrier or any other carrier participating in this Agreement.

d) An employee covered by this Agreement who

73

believes that he/she is not receiving workers' compensation benefits to which he/she is entitled, including medical and hospital services, shall notify the Program Representative. If the issue cannot be resolved to the satisfaction of the employee within five (5) working days, the employee may apply for mediation. The parties may extend the five (5) working day period by mutual agreement. No issue will proceed to mediation without first being presented to the Program Representative. The response of the Program Representative to the employee shall be explained in terms which are readily understandable by the employee. The Program Representative will maintain a log recording all activity, including the date of each notification and the date of each response.

e) Application for mediation shall be made not more than sixty (60) calendar days after the Program Representative has responded to the employee's notification. Any application for mediation shall immediately be assigned to a mediator selected under this Agreement. The mediator will contact the parties to the dispute, including the Employer insurance carrier, and take whatever steps the mediator deems reasonable to bring the dispute to an agreed conclusion. The Joint Labor-Management Oversight Committee will determine the rules by which mediations are conducted.

f) Mediation shall be completed in not more than fourteen (14) calendar days from the date of referral,

except that in no event shall an issue be permitted to proceed beyond mediation until and unless the moving party cooperates with the mediator and the mediation process. The Employer agrees to cooperate fully in the dispute resolution process and to provide all relevant documents requested by the employee, the mediator or the arbitrator.

g) Within thirty (30) calendar days after the completion of the mediation process, any party not satisfied with the outcome may file with the mediator a request that the matter be referred for arbitration. Upon receipt of such a request, the mediator shall immediately refer the matter to an arbitrator agreed to by the parties to this Agreement for arbitration. The arbitration date will be set with sufficient advance notice to permit the parties to retain and/or consult with legal counsel.

h) Arbitration will be conducted pursuant to the rules of the American Arbitration Association, using an arbitrator agreed to by the parties to this Agreement. Unless the parties to the matter otherwise agree, arbitration proceedings shall be completed within thirty (30) calendar days after referral, and an arbitration decision rendered within ten (10) calendar days of the completion of the proceedings.

I) No written or oral offer, finding or recommendation made during the mediation process by any party or mediator shall be admissible in the arbitration proceedings except by mutual agreement of the parties.

j) The mediator or arbitrator may in his/her or he/she sole discretion appoint an authorized health care provider to assist in the resolution of any medical issue, the cost to be paid by the Employer.

k) Either party to a claim may obtain representation by an attorney or licensed representative at any time. The attorney(s) or licensed representative(s) will be paid under the same circumstances and in the same manner and amounts as provided for under the Law. Neither party will be permitted to be represented by legal counsel at mediation. The fact that the representative of the employee, the Employer or the Employer's workers' compensation insurance carrier's has had legal training or is a licensed attorney shall not bar such person from participating in mediation unless he or she seeks to participate on the basis of a lawyer-client relationship. All communication between the mediator and the parties shall be directly with the parties (unless precluded by language or disability) and not through legal counsel.

l) Determination and/or approval of attorneys'/ licensed representatives' fees, approval of agreements and other similar actions required under the Law to be performed by a referee or a Board Member shall be the responsibility of the mediator or arbitrator. The arbitrator shall also have the authority to enforce the penalty provisions contained in Section 25 (2)(a), (2)(c), and (3)(c) of the Law with regard to only those penalties

paid to the employee.

m) The decision and award of the Arbitrator shall be final, except as provided for in paragraph D of subdivision 2-C of Section 25 of the Law.

n) Any party to a claim may refuse once a mediator or arbitrator named to resolve the claim. The refusal shall be in writing and shall be made within two (2) working days of party receiving the name of the mediator or arbitrator assigned to the claim. A party to a claim may only exercise this option once at the mediation step and once at the arbitration step.

## ARTICLE V
## JOINT LABOR-MANAGEMENT
## OVERSIGHT COMMITTEE

a) The Association and the Unions establish a Joint Labor-Management Oversight Committee to represent their respective interests in the administration of this Program. The Committee's Labor membership shall consist of one (1) designated representative from each of the unions set forth in Article I. The Management membership shall consist of an equal number of representatives designated by the Association from participating employers. The Oversight Committee shall designate six (6) members, three (3) Labor and three (3) Management, to serve as a Working Group with authority to act at the direction of the entire Joint Labor-

Management Oversight Committee. The Prime Carrier shall serve as a non-voting, ex officio member of both the Joint Labor-Management Oversight Committee and the subsidiary Working Group. The Joint Labor-Management Oversight Committee shall operate on a consensus basis.

The Program Coordinator will be an Association staff member and will serve as Chair of meetings of the Joint Labor Management Oversight Committee and the Working Group.

b) The Joint Labor-Management Oversight Committee shall take all actions required to implement the letter and intent of this Agreement, including, but not limited to, the selection of Program Representative, mediator(s), arbitrator(s), network providers and medical providers. Additionally, the Joint Labor-Management Oversight Committee shall receive reports, both in written and oral forms, from the Prime Carrier and any other participating carrier and the Working Group, shall receive complaints and investigate and respond appropriately, and shall respond to requests for systemic information whenever practicable. Accordingly, the parties hereto consent to the agreements, decision and other actions taken by the Joint Labor-Management Oversight Committee and the Working Group consistent with this Agreement and the exigencies of operating the program for the benefit of the Employees and the Employers.

# ARTICLE VI
# MISCELLANEOUS ISSUES

a) All payments required to be made by the Employer pursuant to this Agreement shall, in accordance with the Law, be made by its workers' compensation carrier. Similarly, all actions required by the Law to be undertaken by the insurance carrier rather than the employer shall be performed by the Employer's workers' compensation insurance carrier.

b) The Employer shall take whatever steps are necessary to insure that an Employer representative is available to fulfill the Employers' obligations until all claims subject to this Agreement are resolved.

c) If any provision of this Agreement or its application to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of this Agreement than can be given effect without the invalid provision or application, and to this end the provisions of this Agreement are declared to be severable.

d) If any other contractor association and its representative union(s) wish to participate in the Program established under this Agreement, they may apply to the Joint Labor-Management Oversight Committee established in Article V.  If approved for participation, the association and the union(s) may be entitled to name only one (1) additional Management

member and only one (1) additional Union member, respectively, to serve on the Joint Labor-Management Oversight Committee.

e) It is expressly agreed and understood that under no circumstances shall the Association(s) or the Union(s) signatory hereto become liable for providing any workers' compensation benefits by virtue of their participation in this Agreement, including but not limited to the payment of claims, related costs or the provision of services.

f) In a contested claim if the employee prevails at the arbitration step the Prime Carrier or any other participating carrier shall pay the attorney's/licensed representatives' fees of the employee's attorney in addition to any award made to the employee.

g) The parties agree to review the workers' compensation cost savings obtained by Employers participating in this Agreement with the goal of sharing a portion of those savings after an increase in competitiveness, if any, with the Unions. The threshold for determining increased competitiveness through workers' compensation cost savings shall be the Prime Carrier or any other participating insurer establishing rates, dividends, and premiums equivalent to the most competitive available from a commercial carrier, State Insurance Fund, or Safety Group outside this Agreement. After reaching the threshold for determining increased competitiveness, a portion of

those workers' compensation cost savings will be shared through supplementing the statutory benefits or some other formula as determined by the parties and the Prime Carrier and other participating insurers.

The Prime Carrier and any other participating insurer will observe the reporting requirements in Article V b of this Agreement. At least one (1) written report will be provided prior to the first of the expirations of the current collective bargaining agreements between the Association and the Unions on April 30, 1997 (Bricklayers and Allied Craftworkers Local No. 2 - Building, Carpenters Local No. 370, Iron Workers Local No. 12, Laborers' Local No. 157 & 190, International Union Operating Engineers Local No. 106, Brotherhood of Teamsters Local No. 294), May 31, 1997 (Bricklayers and Allied Craftworkers Locals Nos. 2, 8, 11, 45), and May 31, 1997 (Bricklayers and Allied Craftworkers - Tile, Marble and Terrazzo Finishers and Workers), respectively.

The Association and the Unions will endeavor together to explore the development of additional or enhanced features by the Prime Carrier and any other participating carrier for inclusion in this Agreement.

h) MULTIPLE EMPLOYER CLAIMS. Medical care that is the responsibility of the current Employer and the collectively bargained program will be furnished through the program's medical network. If the claim involves a medical condition for which the employee

was previously treated, and the prior treating physician is not a member of the program medical network, the physician will, at the claimant's written request to the Program Representative, immediately be put through the credentialling process and after successful completion added to the program medical network. If an issue arises involving only the current Employer, it will be dealt with through the Agreements alternative disputes resolution process. If an issue arises that involves the current Employer and a prior Employer who is not party to the Agreement, it will be dealt with through the WCB process. If an issue arises that involves the current Employer and a prior Employer who is party to the Agreement, it will be dealt with through the Agreement alternative dispute resolution process.

I) The parties agree that safety is of the greatest importance in the prevention of injuries in workers' compensation. The Association and the Prime Carrier and other participating insurers will develop a Safety Recognition Program including Employer and employee awards. The Employers and the Unions agree to promote safety and undertake any safety recommendations made by the Prime Carrier and other participating insurers.

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date and year set forth, in the City of Albany, County of Albany, State of New York.

ACCEPTED FOR THE UNIONS for and on behalf of the signatory Unions:

International Union of
Bricklayers and Allied
Craftworkers
(Local No. 2)
Garry Hamlin, President

International Union of
Bricklayers and Allied
Craftworkers
 (Local No. 8)
Mark Babbage, President

International Union of
Bricklayers and Allied
Craftworkers
(Local No. 11)
Steve Remington,
 Business Manager

International Union of
Bricklayers and Allied
Craftworkers
 (Local No. 45)
William R. Wright Jr.,
Business Manager

United Brotherhood of
Carpenters and Joiners
of America
(Local No. 370)
John Stefanik,
Business Representative

International Association
of Bridge, Structural and
Ornamental Iron Workers
(Local No. 12)
 Michael Burns,
Business Manager

Laborers' International
Union of North America
(Local No. 157)
Robert L. Pollard,
Business Manager

Laborers' International
Union of North America
(Local No. 190)
Samuel M. Fresina,
Business Manager

International Union of
Operating Engineers
(Local No. 106)
Gene Messercola,
Business Manager
/President

International Brotherhood
of Teamsters
(Local No. 294)
Howard Bennett,
President

ACCEPTED FOR THE ASSOCIATION for and on
behalf of the signatory Employers:

Charles McGrath
J.D. Gilbert
Vic Mion Jr.
Toni Cristo
Wayne Brownell  Walt Gould

Tom Murray
John Di Guilio
David Rubin
Bruce Hodkins

ACCEPTED FOR ULICO CASUALTY COMPANY:

Todd Rowland

# NON-ASSOCIATION EMPLOYER SIGNATURE PAGE

I, the undersigned, as Independent Employer of Tile, Marble & Terrazzo Finishers and Workers, having read the accompanying Agreement between Eastern Contractors Association, Inc. and the Tile, Marble and Terrazzo Finishers and Workers of the Bricklayers and Allied Craftworkers Local Union No. 2, New York, that are signatory to this Agreement, agree to abide by the terms of the same in consideration of receiving the same guarantee and privileges as members of Eastern Contractors Association, Inc.

The undersigned Independent Employer further agrees that any and all disputes that may arise between the Union and the Employer concerning the application or interpretation of the terms of this Agreement, shall be settled by arbitration pursuant to Article VIII of the attached Agreement before an Arbitration Board to consist of three (3) members selected by the Union and three (3) members selected by Eastern Contractors Association, Inc.

The undersigned Employer has read and hereby approves the Collective Bargaining Agreement dated June 1, 2000 between Eastern Contractors Association, Inc. and Tile, Marble and Terrazzo Finishers and Workers of the Bricklayers and Allied Craftworkers Local Union No. 2, and any successor Collective

Bargaining Agreement between said parties and herewith accepts and becomes one of the parties thereto and agrees to be bound by all its terms and conditions. The undersigned Employer recognizes Eastern Contractors Association, Inc. as the exclusive multi-employer collective bargaining unit for all Employers employing these trades in the geographical jurisdiction of this Agreement.

The life of this signed Independent Agreement is to be coextensive with the terms and conditions set out or as they shall be set out from time to time in the aforementioned Collective Bargaining Agreement with the aforementioned parties thereto, and shall continue in effect for such terms. The Union shall give written notice to the Association of the signing of this Independent Agreement by an Employer.

This signed Independent Agreement shall be binding upon the Employer named herein and its successor and assigns, and no provision herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer, assignment, encumbrance, joint venture, or any combination or other disposition of the Corporation or Company.

The undersigned Employer further agrees to payment of contributions to the Health Fund, Pension Funds; Mason's Promotion, International Masonry Institute, capital District Masonry institute, Construction Industry Advancement Program, and as appropriate Savings

Fund and Training and Education Fund: and the undersigned Employer agrees to be bound by the applicable Declaration of Trust and hereby irrevocably designates as its representative on the Board of Trustees such Employer Trustees together with their successors as selected in the manner provided with the Agreement and Declaration of Trust and agrees to be bound by all action taken by the said Employer Trustees pursuant to the said Agreement and Declaration of Trust.

We hereby accept the provisions of the above contract. The Union and said Company do hereby agree to abide by and enforce same.

Please forward a completed copy of these pages to:

Bricklayers and Allied
Craftworkers Local No. 2
300 Centre Drive
Albany, NY 12203

Eastern Contractors
Association, Inc.
6 Airline Drive
Albany NY 12205

---

Company Name

---

Address

---

Telephone Number

---

Authorized Officer Signature

---

Federal Registration Number

---

Insurance Carrier

---

Policy Number

---

Unemployment Insurance Number

---

New York State Disability Benefits Number

---

New York State Disability Carrier's Name

---

Local President's/Field Representative's Signature

---

Local Number, State

---

Date

# NOTES

# EXHIBIT C

NY 0192



# WORKING AGREEMENT
## for
## TILE, MARBLE, TERRAZZO, MOSAIC
## MECHANICS FINISHERS, & APPRENTICES

between



## INTERNATIONAL UNION OF BRICKLAYERS
## & ALLIED CRAFTWORKERS
## LOCAL UNION NO. 2

and

## CONSTRUCTION EMPLOYERS ASSOCIATION OF CNY, INC.
## LRS OF NORTHERN NEW YORK BUILDERS EXCHANGE, INC.
## LRS OF MOHAWK VALLEY BUILDERS EXCHANGE, INC.

Effective 6/1/2001
Expires 5/31/2004



RECEIVED

OCT 2 4 2003

COLLECTIVE BARGAINING SERVICES

This is a copy printed from the IUBAC Document Management System.

# INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL UNION NO. 2

## ALBANY CENTRAL OFFICE
Albert B. Catalano, President
John Buck, Secretary-Treasurer
302 Centre Drive
Albany, New York 12203
Phone: 518/456-5477

## SYRACUSE/UTICA/OSWEGO
Luke Renna, Field Representative
Phone: 315/461-0731
or call Central Office

## WATERTOWN/OGDENSBURG
Timothy O'Donnell, Field Representative
Phone: 315/346-1785
or call Central Office

---

## CONSTRUCTION EMPLOYERS ASSOCIATION OF CENTRAL NEW YORK, INC.
Earl N. Hall, Executive Director
6563 Ridings Road
Syracuse, New York 13206
Phone: 315/437-3717

## LABOR RELATIONS SECTION OF NORTHERN NEW YORK BUILDERS EXCHANGE, INC.
Lanny J. Miller, Executive Director
22074 Fabco Road
Watertown, New York 13601
Phone: 315/788-1330

## LABOR RELATIONS SECTION OF MOHAWK VALLEY BUILDERS EXCHANGE, INC.
Jack Endryck, Labor Relations Director
10 Main Street
Whitesboro, New York 13492
Phone: 315/736-9485

This is a copy printed from the IUBAC Document Management System.

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | Scope of Agreement | 1 |
| II | Trade Jurisdiction | 1 |
| III | Geographical Jurisdiction | 1 |
| IV | Management Rights | 2 |
| V | Union Security | 2 |
| VI | Strike and Lockout | 3 |
| VII | Non-Discrimination | 3 |
| VIII | Days and Hours of Work | 3 |
| IX | Holidays | 3 |
| X | Travel & Expense Allowance | 4 |
| XI | Apprenticeship and Training | 4 |
| XII | Apprentice Wages | 4 |
| XIII | Welfare, Pension & Annuity | 4 |
| XIV | Industry Advancement Program | 7 |
| XV | Jointly Trusteed Funds | 8 |
| XVI | Working Dues Check-off Authorization | 9 |
| XVII | Arbitration | 10 |
| XVIII | Wages, Fringe Benefits, Contributions & Deductions | 11 |
| XIX | Substance Abuse Testing | 12 |
| XX | Subcontracting Clause | 12 |
| XXI | Duration | 13 |
| | Signature Page | 14 |

This is a copy printed from the IUBAC Document Management System.

# ARTICLE I
## SCOPE OF AGREEMENT

**Section 1.** Whereas the parties hereto desire to stabilize employment in the Building Construction Industry, agree upon wage rates, fringe benefits, hours and conditions of employment; Now, therefore, the undersigned Employer and the Unions, in consideration of the mutual promised and convenants herein contained, agree as follows,

**Section 2.** This agreement withnesseth that the parties hereto agree to be bound in their relations, one to the other, during the term from June 1, 2001 to May 31, 2004.

**Section 3.** If either party desires to make any changes in this Agreement, they shall notify the other party in writing at least ninety (90) days prior to May 31, 2004 and agreement committees shall meet within thirty (30) days thereafter. If the Employer fails to meet with the Union within a thirty (30) day period, this agreement will then expire May 31, 2004. In the event that neither party shall notify the other party of any requested changes, this agreement shall continue in force for the following year.

# ARTICLE II
## TRADE JURISDICTION

This Agreement pertains only to terms and conditions of employment for workers engaged in the following crafts: Tile Setters or Layers, Marble Masons and Terrazzo and Mosaic Workers who are referred to herein also as workmen, mechanics, journeymen, apprentices, tile setter finisher, marble mason finisher, terrazzo and mosaic finisher. The parties acknowledge and agree to trade jurisdiction of these three crafts as defined in the current National Agreements between INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS and the Tile Contractors Association of America, Inc., the National Association of Marble Dealers. The parties further agree that those parts of the above mentioned National Agreements in effect at the time of the signing of this Agreement which are not in conflict with this Agreement, are part of this Agreement.

# ARTICLE III
## GEOGRAPHIC JURISDICTION

The Employer recognizes the International Union of Bricklayers & Allied Craftworkers Local 2 as the sole and exclusive bargaining representatives for all Tile, Marble, Terrazzo Mechanics, Finishers, & Apprentices in the geographical jurisdiction as follows:

**UTICA** - Oneida Co., Herkimer Co., Madison Co., except the townships of Sullivan and Cazenovia. In Lewis Co. the townships of Osceola, Lewis, West Turin, Leyden and Turin. In Otsego Co. the township of Brookfield.

**SYRACUSE** - Onondaga Co., Cayuga Co. and the townships of Sullivan and Cazenovia in Madison Co.

**OSWEGO** - Oswego County.

**WATERTOWN** - Jefferson County and townships of Diana, Croghan, Denmark, Pinckney, Harrisburg, Lowville, New Breman, Watson, Martinsburg, Montague, Highmarket, and Grieg in Lewis County.

**OGDENSBURG** - St. Lawrence County.

1

This is a copy printed from the IUBAC Document Management System.

# ARTICLE IV
# MANAGEMENT RIGHTS

**Section 1.** The direction of the employees, including the making and enforcing of rules to assure orderly and efficient operations, the determination of employee competency, the right to hire, transfer, promote, demote, discharge, let off for lack of work, and the scheduling of work are rights vested exclusively in the Employer.

**Section 2.** The operation of the business, including the introduction of new or improved methods and facilities, the determination of the amount of supervision necessary and the sizes and composition of the work force and crews are rights vested exclusively in the Employer.

**Section 3.** The rights set forth herein are not exclusive but merely indicate the type of matters or rights which belong to and are inherent to Management.

# ARTICLE V
# UNION SECURITY

**Section 1.** All employees employed by the Employer who, at the time of their employment by the Employer, are not members of the Union, shall as a condition of employment, become members of the Union after the eighth day (8th) following their employment or on the effective date of this Agreement, whichever is later, or on the earliest date permitted by applicable Federal law. All employees covered by this Agreement who are members of the Union on the effective date of this Agreement, shall, as a condition of employment, maintain their membership in the Union during the terms of this Agreement and all employees who become members of the Union, shall, as a condition of employment, maintain their membership in the Union during the term of this Agreement after the eighth day (8th) following their employment or the effective date of this Agreement. The Union further agrees that membership in the Union will be available to all such employees of the Employer under the same terms and conditions applicable to all other applicants for membership in the Union.

**Section 2.** The hiring of new workmen and the discharging of employees upon the request of the Union shall be in accordance with the Labor Management Relations Act of 1947 or any amendments thereto.

**Section 3.** In consideration of the foregoing, the Union agrees to supply competent, skilled and qualified journeymen and apprentices to the Employer upon his request, to perform work coming within the trade, craft and geographical jurisdiction of the Union.

**Section 4.**
NON-ASSOCIATION EMPLOYER - Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union, pursuant to Section 9(a) of the National Labor Relations Act, as the exclusive collective bargaining agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employee's exclusive representative as a result of an NLRB election requested by the employees. The Employer agrees that it will not request an NLRB election.

ASSOCIATION MEMBER FIRMS - (Wherever the term Association is used in the following paragraph, it shall be defined as members of the following, and only the following, Associations: Construction Employers Association of CNY, Inc., LRS of Mohawk Valley Builders Exchange, LRS of Northern New York Builders Exchange)

All firms which are members of the Association and are parties to the Association and Bricklayers and Allied Craftworkers Local Union No. 2, building agreement, or which have designated to one of the Associations bargaining rights for the Bricklayers and Allied Craftworkers Local Union No. 2 building

2

This is a copy printed from the IUBAC Document Management System.

agreement will be covered by the Association's recognition policy for the Bricklayers and Allied Craftworkers Local Union No. 2.

# ARTICLE VI
## STRIKE AND LOCKOUT

**Section 1.** As long as this Agreement is in effect, the Employers will not lock out unit employees. It is expressly agreed that: 1) a refusal to employ any person who is on strike in this or another jurisdiction, or 2) the cessation or curtailment or operations arising from labor relations with the Union or another Union, shall not be construed as a "lockout".

**Section 2.** During the term of this Agreement the Union guarantees to the Employers, on behalf of itself and each of its members, that there will be no strike of any kind, boycott, picketing, work stoppage, slowdown or any other similar type of interference, coercive or otherwise, with the Employers operations. For the purpose of this paragraph the question of whether the members of the Union actually authorize or subsequently ratified the specific acts aforementioned shall not be controlling. In the event any violation of this paragraph occurs, the Employers agree that there will be no liability on the part of the Union, provided the Union meets the following conditions within twenty-four (24) hours: 1) Union shall immediately declare publicly in writing that such action is unauthorized; and 2) the Union shall immediately order its members to return to work, notwithstanding the existence of any illegal or wildcat picket line.

**Section 3.** Any Employer failing to make payments in accordance with the terms of the collective bargaining contract or failing to file reports with the Welfare Fund and/or Pension Fund as required hereby shall be in violation of the Agreement. The Union shall have the right to take whatever economic action that it may desire without first resorting to arbitration, provided it has first given five (5) calendar days written notice via certified mail to the delinquent Employer and to any prime contractor employing the delinquent Employer if the prime contractor is signatory to this Agreement.

# ARTICLE VII
## NON-DISCRIMINATION

Neither the Employer nor the Union shall discriminate in any manner whatsoever against any employee or applicant for employment because of race, creed, color, religious belief, sex or national origin.

# ARTICLE VIII
## DAYS AND HOURS OF WORK

**HOURS** - The regular working time shall be five (5) days in any one (1) week from Monday to Friday, eight (8) hours in any one (1) day between 8:00 A.M. to 12:00 Noon and from 12:30 P.M. to 4:30 P.M.

Regular and Saturday overtime is time and one-half the regular rate. Overtime on Sundays and Holidays is at double the regular rate.

# ARTICLE IX
## HOLIDAYS

It is hereby agreed that Legal Holidays are: New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

3

This is a copy printed from the IUBAC Document Management System.

# ARTICLE X
## TRAVEL AND EXPENSE ALLOWANCE

Section 1. From the shop of the Employer:

| | |
|---|---|
| 0 - 15 miles | Free Zone |
| 16 - 100 miles | $ .23 per mile (to and from the perimeter of the free zone) |
| 101 - 200 miles | $45.00 per day |
| over 200 miles | $45.00 per day plus $.36 per mile measured to and from the 200 mile perimeter only on the days that the person actually travels (i.e. Monday, going to the job and Friday, returning). |

Section 2. In the event employees are required to be available and ready to work at the job site but cannot, due to the job conditions beyond their control, the expense rate per working day as set forth above shall be paid for each day such conditions exist.

# ARTICLE XI
## APPRENTICESHIP AND TRAINING

Joint Apprenticeship Committees, consisting of equal representation from the Union and the Employer, have been established under this Agreement. The Committees have the sole responsibility for recruiting and training apprentices under the terms and conditions of this Agreement as noted.

The TCAA and BAC agree to actively support through local agreement funding and regional/national participation the International Masonry Institute's Apprenticeship and Training Program in order to recruit and train a sufficient work force of skilled tile layers to meet the expanding manpower needs of this Industry through local, regional and national training programs.

# ARTICLE XII
## APPRENTICE WAGES AND FRINGE BENEFITS

The rate for Apprentices shall be: In accordance with respective local JAC Programs. New Apprentices will not receive a Local #2 Pension Contribution for the first 500 hrs. (0-500 Hours) of covered employment as a New York registered apprentice with no previous credit. All other fringe benefits shall be paid at the journeyman's rate. The JATC will notify the employer when the Apprentice is due for wage and/or benefit increase(s).

# ARTICLE XIII
## WELFARE, PENSION, TRAINING & EDUCATION

Section 1. The contractor agrees to make payments to the welfare, pension and traning & education funds for each hour worked on behalf of each employee performing work covered by this agreement, as indicated in the hourly rates and fringe benefits schedule for each individual area. All such payments for all areas covered under this agreement shall be made to and payable to:

Bricklayers and Allied Craftworkers Local 2 Joint Benefit Funds
300 Centre Drive
Albany, New York 12203

Section 2. Pursuant to Section 302 (c) (5) Labor Management Relations Act, each employer shall contribute, in addition to payment of the wage rate herein provided an amount specified in the hourly rates and fringe benefits schedule for each individual area per hour for each hour actually worked to employees employed under the collective bargaining agreement and shall pay the aggregate sum thereof over to the jointly administered welfare trust fund.

4

This is a copy printed from the IUBAC Document Management System.

**Section 3. Health Fund:** The Employer shall contribute to the Bricklayers and Allied Craftworkers Local No. 2 Health Benefit Fund the amount specified in the wage schedule, for each hour of work by each employee covered by this Agreement. In addition to the hourly contribution, the Employer's remittance to the Health Benefit Fund shall include the hourly deduction from the employee's pay, as specified in the wage schedule, for the vacation benefit. Such Employer remittances are included in the Monthly Fringe Benefit Contribution. The Health Benefit Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal member of representatives of the Employers and the Union, which Agreement and Declaration of Trust shall conform to all requirements under law. A copy of said Agreement and Declaration of Trust, together with any amendments thereto, are incorporated herein by reference and shall be considered as part of this agreement as though set forth here at length.

**Vacation Benefit*:**     See Wage & Fringe Benefits Schedule

*This amount, per hour, is to be deducted from the Employee's wages for each hour worked by the Employee in the Union's geographical jurisdiction after the appropriate taxes have been computed and remitted to the Health Benefit Fund.

**Section 4.** The aforesaid jointly administered welfare trust fund, established by way of a certain trust indenture for all areas and entitled health and welfare fund, specifies the detailed basis on which the payments are to be made and such trust indenture is incorporated into this collective bargaining agreement by reference as though set forth here at length.

**Section 5.** Pursuant to Section 302 (c) Labor Management Relations Act, each employer shall contribute, in addition to payment of the wage rate herein provided, an amount specified in the hourly rates and fringe benefits schedule for each individual area per hour for each hour actually paid to employees employed under this collective bargaining agreement, and shall pay the aggregate sum thereof over to the jointly administered pension trust fund.

**Section 6.** The aforesaid jointly administered pension and/or training & education trust fund established by way of certain trust indentures specifies the detailed basis on which the payments are to be made and such trust indenture is incorporated into this collective bargaining agreement by reference, as though fully set forth here at length.

**Section 7.** All such payments shall be made at the time and in the manner provided for, except as noted Section 15, by the current rules and regulations of the board of trustees who administer the respective trust and fringe benefit funds and the employers are also bound by all the terms and conditions of each such trust agreement, and amendment or amendments thereto, as well as the current rules and regulations which are a part of this agreement. Copies of the aforesaid documents shall be available without cost to any contributing employer upon demand.

**Section 8.** The trustees are authorized to enter into reciprocal agreements with other welfare, pension and training & education funds.

**Section 9.** The contractors agree that any contractor acting as a general contractor shall be responsible for all monies due to the welfare fund, pension fund and/or training & education fund relating to the job, whether the contractor performs the work or subcontracts the work out to another contractor.

**Section 10.** In the event any contractor does not make contributions to the welfare fund, pension fund and/or training & education fund as provided for herein, the contractor agrees that such delinquent contractor shall be charged with interest at the current prime rate, all reasonable collection costs, attorney's fees, auditors fees, and legal expenses incurred by the trustees of the welfare fund, pension and/or training & education fund in collecting the monies due hereunder and that a money judgement may be rendered against such delinquent

5

This is a copy printed from the IUBAC Document Management System.

contractor such costs, fees and expenses in addition to a money judgement for unpaid contributions. The contractor agrees that any such delinquent contractor shall also bear the legal expense incurred by the aforesaid trustees in connection with the institution of any criminal action under Section 962 (a) of the penal law of the State of New York relating to the pension, welfare or training & education benefits.

Section 11. The books and records of each contractor pertinent to the employment of employees shall be made available at all reasonable times for inspection and audit by the accountants of the welfare fund, pension fund and/or training & education fund, including, without limitation, all payroll sheets, W-2 forms, New York State employment reports, social security reports, insurance company reports and supporting checks, ledgers, vouchers and any other items concerning payrolls. Inspection shall be restricted to a verification of payments made and/or due to the welfare, pension and/or training & education funds except in cases where a contractor shall bear the cost of inspection and audit as aforesaid. A single audit shall cover all funds.

Section 12. Each contractor shall furnish the trustees of the welfare, pension and/or training & education funds with periodic reports showing the names, social security numbers, hours worked and location of job of each employee performing work covered by this agreement. Such reports shall be filed weekly, unless otherwise agreed upon in writing and shall be submitted weekly following the close of the weekly payroll period. In the event that no workers are employed during the month, a negative report must be filed. The administrator to supply the forms and the instructions for same to the contractor.

Section 13. Any contractor who fails to make contributions or file reports with the welfare fund as herein above required shall be liable for all claims occuring in favor of the employees from the last reported date for which contributions have been made to the date of payment of all arrears, including collection, legal and auditing costs. Where a former employee of a delinquent contractor not entitled to welfare benefits would be entitled to benefits had the contractor filed reports and made contributions as required herein. The delinquent contractor shall also be liable for all claims of such former employees occuring during the period of delinquency.

Section 14. Any contractor failing to make payments in accordance with the terms of the collective bargaining contract and/or failing to file reports with the welfare fund, pension fund and/or training & education fund as required hereby shall be in violation of the agreement. The Union, if after providing a two (2) day written notification to the prime contractor of its intention, it is further agreed that there is hereby extended to the Union, the unequivocal right, when any employer shall become delinquent in contributions and remittances due to the said welfare, pension and/or training & education funds, to declare this agreement breached by any delinquent employer and at the option of the Union this agreement may be considered terminated. The Union may also have the option with respect to any delinquent employer to withdraw the services of members in the collective bargaining unit from the said employer or to strike or engage in a boycott with respect to any such delinquent employer. In the event that the Union exercises its option in any manner under the provisions of this article, the employers agree, that as additional liquidated damages, to pay each of the said employers' employees represented by the Union, said employees' regular rate of pay for all time lost from work as a result of the action herein granted the Union for the purpose of recovering delinquent contributions and remittances due the welfare, pension and/or training & education funds of any Union in this Council.

Section 15. Any contractor who is delinquent in making payment to the welfare, pension and/or training & education funds for a period of one month or more shall thereafter be required to make a cash deposit with the trustees of the welfare, pension and/or training & education funds in an amount to be determined by the trustees of the respective funds. The cash deposit shall be held as security by the trustees for the future compliance with the provisions of this article.

Section 16. It is understood if an employer is delinquent in making the contributions and deductions provided in this agreement, the Union may, upon a certified notice, require such an employer to remit weekly.

Section 17. Acceptance of this agreement shall automatically bind the participating contractors and all other contractors who become signatory hereto to the terms of the trust agreement under which the welfare fund,

6

This is a copy printed from the IUBAC Document Management System.

pension fund, training & education fund, apprentice fund and International Pension Fund are operating. In the event of a conflict between the terms of the "trust agreement" and this "contract", the trust agreement shall be controlling.

# ARTICLE XIV
## INDUSTRY ADVANCEMENT PROGRAM

In addition to the preceding wage and welfare, pension and training & education payments, each employer shall, on or before the fifteenth (15th) day following the end of each calendar month pay to the Construction Employers Assoc. of C.N.Y., Inc., Industry Advancement Program, the L.R.S. of Mohawk Valley Builders Exchange, Industry Advancement Program, the L.R.S. of Northern New York Builders Exchange, Industry Advancement Fund, hereinafter referred to as the Industry Program, the appropriate amount as specified in the article of this Agreement that covers wages and fringes, for which wages are payable during said calendar month to any employee covered by this Agreement. Simultaneously with making payments of the contribution the employer shall also file a written report with the Industry Program setting forth (1) the names and Social Security numbers of employees covered by this Agreement who have been in the employ of the employer during such calendar month; and (2) the number of hours worked by each employee during such calendar month.

The Association agrees to establish an Industry Program for the purpose of meeting all costs to the Association of conducting labor relations, and all matters and problems incidental thereto, on an industry-wide basis in the area for the benefit of all contractors performing work in said area.

The activities to be financed by the Funds of the Industry Program include, but shall not be limited to the following: safety and accident prevention, apprenticeship training and other educational programs; public relations; industry relations; management expenses in connection with collective bargaining on an industry-wide basis, and in maintenance of grievance procedures, management costs of participating in joint apprentice-ship, health and welfare and pension programs; and such other comparable activities as may be engaged in from time to time.

Anything herein contained to the contrary notwithstanding, there is specifically excluded from the purposes of the Industry Program the right to use any of its funds to maintain lawsuits against the local union and its parent and International Union; for lobbying in support of anti-labor legislation and/or to subsidize contractors during periods of work stoppages or strikes.

To provide a guarantee of payment to the respective Trustees of the Welfare, Pension, Promotion and Industry Program funds, as described in the Articles of this Agreement, any contractor, signatory to this Agreement, that uses a subcontractor, agrees to pay to said Funds any amount owed to said Funds by said delinquent subcontractor. However, this provision is contingent on the following conditions:

1. The General Contractor will not withhold any monies guaranteed under this Article unless first notified by fund administrator.

2. The request for delinquent payments must be submitted in writing and must include the amount owed said Fund(s). Copies of this request will be sent to the Union, the Association and the delinquent subcontractor by the fund administrator.

3. The respective fund administrator must document said delinquent funds within the thirty (30) day period after sending said delinquent notice. If the fund administrator fails to do this the General Contractor will cease withholding monies from that subcontractor at that time.

4. These guaranteed payments must be taken from monies still held by the General Contractor but owed to the delinquent subcontractor.

7

This is a copy printed from the IUBAC Document Management System.

5. **The** General Contractor is obliged to pay to said funds only those monies owed by the delinquent subcontractor on that particular job.

6. **There** must be a copy of the fully signed current labor agreement for both the General Contractor and subcontractor on file at the Association office and/or the Fund office.

**The** Union, recognizing its responsibility to insure payment of these funds, agrees to furnish a fully signed current Agreement to the Association and to the Fund office and not to furnish men to employers before obtaining said signed Agreements.

**Any** subcontractor signing this Agreement recognizes and sanctions the General Contractors rights and obligation under this provision.

## ARTICLE XV
## JOINTLY TRUSTEED FUNDS

**Section 1.** In addition to the wages and other payments herein provided for, the Employer agrees to pay the specified contributions to the following designated funds:

### International Pension Fund

Bricklayers and Trowel Trade International Pension Fund

(1) The contribution to the Bricklayers and Trowel Trades International Pension Fund (IPF) shall be required in hourly rate and fringe benefits schedule for each individual area for each hour for which a covered employee receives pay.

(2) The payments required above shall be made to the Bricklayers and Trowel Trades International Pension Fund, which was established under an Agreement and Declaration of Trust dated 1 July 1972.

### International Masonry Institute

(1) The contribution to the International Masonry Institute (IMI) shall be as required in hourly rate and fringe benefits schedule for each individual area for each hour for which a covered employee receives pay. The Employer's total contribution for each hour for which an employee receives pay shall be allocated as specified in Article XVII - Wages, Fringe Benefits, Contributions & Deductions.

(2) The payments required above shall be made to the International Masonry Institute, which was established under an Agreement and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 22 July 1970) and/or to the predecessor International Masonry Apprenticeship Trust (established under an Agreement and Declaration of Trust, 6 November 1974).

**Section 2.** The Employer hereby agrees to be bound by and to the above stated Agreements and Declarations of Trusts, as though he/she had actually signed the individual documents and further agrees to be bound by all actions taken by the trustees of these funds pursuant to said Agreements and Declarations of Trusts.

**Section 3.** The Employer hereby irrevocably designates as its representative on the above stated boards of trustees such trustees as are now serving, or who will in the future serve, as Employer trustees, together with their successors.

8

This is a copy printed from the IUBAC Document Management System.

**Section 4.** For the purpose of this article, each hour paid for, including hours attributable to show-up time, and all other hours for which pay is received by the employee in accordance with this agreement, shall be counted as hours for which contributions are payable to each fund designated in Section 1 of this article.

**Section 5.** Contributions shall be paid on behalf of all covered employees starting with the employee's first day of employment in a job classification covered by this agreement. This includes, but is not limited to, journeymen, apprentices, finishers, trainees and probationary employees.

**Section 6.** All contributions shall be made at such time and in such a manner as the trustees require; and the trustees shall have the authority to have an independent certified public accountant audit the time books, payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the funds designated in Section 1 of this article. Payments shall be made on a monthly basis. Payments for month covered shall be made no later than the 15th of the following month.

**Section 7.** If the Employer fails to make any contribution specified in this article, as per the requirements of the respective Boards of trustees of the aforementioned funds, the Union shall have the right to take whatever steps are necessary, including the withdrawal of manpower, to secure compliance with this agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs for collection of payments due together with attorney's fees and such liquidated damages as may be assessed by the trustees. The Employer's liability for payment under this article shall not be subject to or covered by any grievance or arbitration procedure or any "no strike" clause which may be provided for or set forth elsewhere in the agreement.

# ARTICLE XVI
## WORKING DUES CHECK-OFF AUTHORIZATION

### DUES AUTHORIZATION AND PAC DEDUCTION
### BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL 2, ALBANY, NEW YORK

To all Employers by whom I am employed during the terms of the present or future collective bargaining agreements, either by and between signatory contractor associations, or by an Employer, not a member of said associations who is signatory to a labor agreement with Bricklayers and Allied Craftworkers Local 2, Albany, New York ("Bricklayers Local 2").

I hereby authorize such Employer to deduct from my wages and transmit monthly to said Union, to the International Union, or to any other BAC affiliate the amount of Union dues specified in the collective bargaining agreement. This authorization is voluntarily made and is neither conditioned on my present nor future membership in the Union. This authorization shall become effective with the date of execution and shall continue in effect for a period not to exceed one (1) year or the life of the collective bargaining agreement, whichever is sooner, and for any subsequent period thereafter unless revoked by me within sixty (60) days prior to such contract term or one (1) year, whichever occurs sooner. The revocation must be in writing, bear the date and my signature, and be delivered to Bricklayers Local 2 and the Employer by whom I am employed.

I also hereby voluntarily authorize the Employer to deduct from my wages the sum of two cents ($.02) for each hour paid and transmit that amount in the manner prescribed by the Union to the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC) I fully understand that these amounts are merely suggestions and that I can contribute more or less, and that the Union cannot favor or

9

discriminate against me based upon my decision. This authorization is signed freely and voluntarily and not out of fear of reprisal, and on the understanding that BACPAC is engaged in a joint fund raising effort with the Committee on Political Education of the, American Federation of Labor & Congress of Industrial Organizations, and that the BACPAC will use the money contributed to that effort to make political contributions and expenditures in connection with federal, state and local elections. I reserve the right to change the suggested amount deducted for the Political Action Committee upon my notification to the Union. I also understand that this voluntary authorization may be revoked at any time by written notice to the Employer and BACPAC of a desire to do so.

• To authorize the deduction of both working dues and BACPAC contribution. please sign and date this form.

• To limit authorization to the deduction of either the working dues or BACPAC contribution, please check the appropriate box, sign and date this form.

Date_____     ☐ Authorization of working dues deduction only
Signature_____     ☐ Authorization of BACPAC ($.02) deduction only
Social Security No._____

**Contributions** or gifts to the Bricklayers and Allied Craftworkers and/or its political action committee (BACPAC) are not tax deductible as charitable contributions for federal income tax purposes. However, they may be tax deductible under other provisions of the Internal Revenue Code.

# ARTICLE XVII
# ARBITRATION

**Section 1.** It is agreed that the jurisdiction of work covered by this agreement is that provided for in the charter grant issued by the AFL to the Bricklayers & Allied Craftworkers International Union, it being understood that the claims are subject to trade agreements and final decisions of the AFL-CIO a well as the procedural rules and decisions of the Impartial Jurisdictional Disputes Board, Green Book Decisions of record and jurisdiction assignments agreed to in this collective bargaining agreement. The parties to this agreement are subject to and agree to be bound by all decisions and awards made by the board, appeals board or hearing panels. This stipulation shall be effective for the duration of this collective bargaining agreement.

**Section 2.** In the event of any dispute, disagreement, or grievance, said dispute, disagreement or grievance shall be adjusted as follows:

**A.** Between the Business Agent or authorized representative of the Union and the employer or his authorized representative.

**B.** If the dispute is not settled as provided for above, it is agreed that a Joint Board of Arbitration composed of equal numbers, one half (1/2) of whom shall be appointed by the employer, and one-half (1/2) of whom shall be appointed by the Union, shall be established within forty-eight (48) hours and a decision rendered within two (2) days. The Joint Board of Arbitration shall be comprised of members from the Joint Negotiating Committee.

**C.** In the event the Board fails to arrive at a solution, one additional member shall be chosen by the members of the above Board within two (2) days and the dispute shall be decided by this additional member whose decision shall be final and binding. This additional member shall be selected from lists supplied by the NYS Mediation Board. It is agreed that there shall be no stoppage of work while these proceedings are in progress. The refusal of the employer to proceed under this Article shall not abridge the right of the Union to strike.

**10**

This is a copy printed from the IUBAC Document Management System.

D. The expense and salary, if any, of the employer and the union representative shall be paid by the parties they represent. The expenses and fee, if any, of the arbitrator shall be borne equally by the employer and the Union.

# ARTICLE XVIII
# WAGES, FRINGE BENEFITS, CONTRIBUTIONS & DEDUCTIONS

For the payroll period beginning on or after the effective dates listed, the new wage/fringe rates for **Tile Mechanics & Finishers Local 2 - Syracuse/Oswego are as follows:**

|  | 6/1/01 | 12/1/01 | 6/1/02 | 6/1/03 |
|---|---|---|---|---|
| **Tile Mechanic** | 18.38 | 18.88 | + 1.50 | + 1.50 |
| Welfare | 3.00 | 3.00 |  |  |
| BAC Local Pension | 2.55 | 2.55 |  |  |
| BAC Int. Pension | 1.50 | 1.50 |  |  |
| Training & Education (IMI) | .53 | .53 |  |  |
| IAP | .10 | .10 |  |  |
| Local Dues (deduct) | (.80) | (.82) |  |  |
| Int. Union Dues (deduct) | (.26) | (.27) |  |  |
| Def. & Benefit Fund (deduct) | (.10) | (.10) |  |  |
| Political Action Fund (deduct) | (.02) | (.02) |  |  |
|  |  |  |  |  |
| **Tile Finisher** | 15.88 | 16.38 |  |  |
| Welfare | 3.00 | 3.00 |  |  |
| BAC Local Pension | 2.45 | 2.45 |  |  |
| BAC Int. Pension | 1.50 | 1.50 |  |  |
| Training & Education (IMI) | .53 | .53 |  |  |
| IAP | .10 | .10 |  |  |
| Local Dues (deduct) | (.73) | (.74) |  |  |
| International Dues (deduct) | (.23) | (.24) |  |  |
| Defense & Benefit Fund (deduc t) | (.10) | (.10) |  |  |
| Political Action Fund (deduct) | (.02) | (.02) |  |  |

For the payroll period beginning on or after the effective dates listed, the new wage/fringe rates for **Tile Mechanics & Finishers Local 2 - Utica/Watertown/Ogdensburg are as follows:**

|  | 6/1/01 | 12/1/01 | 6/1/02 | 6/1/03 |
|---|---|---|---|---|
| **Tile Mechanic** | 18.34 | 18.84 | + 1.50 | + 1.50 |
| Welfare | 3.00 | 3.00 |  |  |
| BAC Local Pension | 3.79 | 3.79 |  |  |
| BAC Int. Pension | .30 | .30 |  |  |
| Training & Education (IMI) | .58 | .58 |  |  |
| IAP | .06 | .06 |  |  |
| Local Dues (deduct) | (.55) | (.57) |  |  |
| Int. Union Dues (deduct) | (.26) | (.27) |  |  |
| Def. & Benefit Fund (deduct) | (.10) | (.10) |  |  |
| Political Action Fund (deduct) | (.02) | (.02) |  |  |
|  |  |  |  |  |
| **Tile Finisher** | 15.79 | 16.29 |  |  |
| Welfare | 3.00 | 3.00 |  |  |
| BAC Local Pension | 3.74 | 3.74 |  |  |
| BAC Int. Pension | .30 | .30 |  |  |
| Training & Education (IMI) | .58 | .58 |  |  |
| IAP | .06 | .06 |  |  |
| Local Dues (deduct) | (.47) | (.49) |  |  |
| International Dues (deduct) | (.23) | (.24) |  |  |
| Defense & Benefit Fund (deduc t) | (.10) | (.10) |  |  |
| Political Action Fund (deduct) | (.02) | (.02) |  |  |

11

This is a copy printed from the IUBAC Document Management System.

# ARTICLE XIX
## SUBSTANCE ABUSE TESTING

The union and the employer agree that they will cooperate in establishing drug and alcohol free work sites and in the establishment of a substance abuse testing program. A written program will become a part of the collective bargaining agreement as established by Workplace Safety of Upstate New York, Inc. (WSUNY), a corporation established by labor and management for the purpose of creating and maintaining a uniform drug abuse policy and procedures; WSUNY shall in addition, designate and contract on a collective basis for all related services necessary to execute the drug abuse policy and procedures, including T.P.A. and M.R.O. The employer shall pay the cost of each test and M.R.O. service as established by WSUNY.

# ARTICLE XX
## SUBCONTRACTING CLAUSE

### Section A
(1) The contractor subletting any portion of a job or work on a job site shall as a condition proceeding such subletting request the subcontractor to meet with the representatives of the Local Union for the purpose of complying with the provisions of the Agreement for such work.

(2) In addition, the contractor shall provide in any subcontract that the subcontractor shall conform to the terms of this Agreement insofar as wages, hours and working conditions are concerned.

(3) If it is found that the subcontractor is not complying with Paragraph (1) above, the Local Union shall give the Contractor forty (40) hours notice in writing before any action is taken.

(4) Responsibility of the Contractor for loss of wages and benefits shall be limited to the amount of monies due to the subcontractor by the contractor as of the date of written notice.

### Section B
The employer agrees that this agreement will bind and be for the benefit of any corporation or company which may exist or be formed in which the employer or its principals may have a substantial financial or proprietary interest. If such company is engaged in construction work coming within the work jurisdiction of the Local Unions party hereto and any other work normally covered by this agreement.

### Section C
The general contractor, prime contractor, contractor, builder or subcontractor agrees that they will no subcontract any work covered by this Agreement or any of their employees in order to circumvent the payment of wages, fringe benefits and working conditions, provided for herein.

### Section D
The employer agrees that when subcontracting work covered by this Agreement, which is to be performed within the geographical area covered by this Agreement and at the site of construction, alterations, or repair of a building, structure, road or other work, he/she will subcontract such work only to an employer or person who will agree to comply with all the terms and conditions of this Agreement.

12

# ARTICLE XXI
## DURATION

If either party desires to make any changes in this Agreement, they shall notify the other party in writing at least ninety (90) days prior to the expiration date of this Agreement. In the event that neither shall so notify the other party, this Agreement shall continue in full force and effect for the following year.

It is agreed by both parties that all the terms and conditions of this Agreement shall remain in full force and effect from June 1, 2001 to May 31, 2004.

*Executed this 25th day of May, 2001*

**CONSTRUCTION EMPLOYERS ASSOCIATION OF CENTRAL NEW YORK, INC.**

(s) Earl N. Hall, *Executive Director*

**LRS - NORTHERN NY BUILDERS EXCHANGE**

(s) Larry J. Miller, *Executive Director*

**LRS - MOHAWK VALLEY BUILDERS EXCHANGE**

(s) Jack Endryck, *Labor Relations Director*

**INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL 2**

(s) Albert B. Catalano, *President*

(s) John Buck, *Secretary-Treasurer*

(s) Luke Renna, *Field Representative*

(s) Timothy O'Donnell

13

This is a copy printed from the IUBAC Document Management System.

## International Union of Bricklayers & Allied Craftworkers Local Union 2
### for the
### Tile, Marble, Terrazzo, Mosaic Mechanics, Finishers, & Apprentices

## SIGNATURE PAGE

Date:_____

The undersigned Employer doing business as_____

_____

And having principle offices at_____

_____

is fully familiar with all the terms and conditions of the agreement between The International Union of Bricklayers and Allied Craftworkers Local Union 2, for the TILE, MARBLE, TERRAZZO, MOSAIC MECHANICS, FINISHERS, & APPRENTICES and the Construction Employers Association of Central New York, Inc., the LRS of Mohawk Valley Builders Exchange, Inc., the LRS of Northern New York Builders Exchange, Inc., and agrees to adhere to and be bound by all the terms and conditions thereof without exception.

EFFECTIVE DATE: *June 1, 2001*

BRICKLAYERS & ALLIED CRAFTWORKERS
LOCAL UNION NO. 2
     for the
TILE, MARBLE, TERRAZZO, MOSAIC
MECHANICS, FINISHERS, & APPRENTICES

BY:_____

EXPIRATION DATE: *May 31, 2004*

EMPLOYER:

_____

BY:_____

Oct 24 03 11:49a                                                                    p.1
11/27/2002 15:10  FAX 5184587420

D AND M TILE CORP
275160 0047 NY 3

International Union of Bricklaye~

for use

Tile, Marble, Terrazzo, Mosaic Mechanics, Finishers, & Apprentices

## SIGNATURE PAGE

Date __11/22/02__

The undersigned Employer doing business as __D & M Tile Corp__

And having principle offices at __111 Braintree St.__

__Albany Ny 12205__

is fully familiar with all the terms and conditions of the agreement between The International Unio~ cd

Bricklayers and Allied Craftworkers Local Union 2, for the TILE, MARBLE, TERRAZZO, MOS~ C

MECHANICS, FINISHERS, & APPRENTICES and the Construction Employers Association of Cer~ al

New York, Inc., the LRS of Mohawk Valley Builders Exchange, Inc., the LRS of Northern New York Buil~ rs

Exchange, Inc., and agrees to adhere to and be bound by all the terms and conditions thereof with~ ut

exception.

EFFECTIVE DATE: *June 1, 2001*                    EXPIRATION DATE: *May 31, 2004*

BRICKLAYERS & ALLIED CRAFTWORKERS            EMPLOYER:
LOCAL UNION NO. 2
for the                                       __D+M Tile Corp__
TILE, MARBLE, TERRAZZO, MOSAIC
MECHANICS, FINISHERS, & APPRENTICES           BY: _Anthony_____

BY: _____

Utica Tile finisher + Mechanic

NY0192

K
C8—1428
R JL

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

## I (a) PLAINTIFFS
JOHN FLYNN, et al.

1100 1

## DEFENDANTS
D AND M TILE CORP.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006

Case: 1:08-cv-01428
Assigned To : Leon, Richard J.
Assign. Date : 8/18/2008
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**
☐ 151 Medicare Act
**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/* *2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ● **K.** *Labor/ERISA* *(non-employment)* | ○ **L.** *Other Civil Rights* *(non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 USC 1132

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    **DEMAND $** _____ Check YES only if demanded in complaint    **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐   NO ☒   If yes, please complete related case form.

DATE 8/18/08    SIGNATURE OF ATTORNEY OF RECORD _(signature)_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.